Dennis

v.

Dennis

March 22, 1982

By JUDGE JACK B. COULTER

The issues originally raised by Mr. Dennis in these current proceedings by his motions to strike have been substantially blunted by the petition of Mrs. Turner (the former Mrs. Dennis) asking for an increase in child support payments in her own right. Hence, the observation made by John H. Murray, former Special Assistant Attorney General, in his letter to Mr. Dennis's attorney of December 3, 1981, is substantially accurate:

> Since this motion is made by Mrs. Turner, the Division of Support Enforcement is not involved. Accordingly, your complaints about D.S.E.'s involvement are moot.

Whether or not the State Welfare Department's Division of Support Enforcement can seek an _increase_ in child support on its own, as assignee of a mother's rights, as distinguished from merely affording "services of support collection" on behalf of a person no longer eligible for welfare benefits, has now become academic. The mother in her own name seeks such increase. Her right to do so cannot be seriously questioned. The only practical issue remaining, then, as a result of the father's motions to strike is the pro-

priety of the Division's attorney representing the mother personally.

The father claims that the duties of the Division's attorney are limited by statute to the enforcement of support; that he is without standing to seek an increase in the amount of such support; that he is representing the mother only in his capacity of representing the Division; and that based on the principle established in Richmond Association of Credit Men, Inc. v. The Bar Association of the City of Richmond, 167 Va. 327 (1937), which prohibits a lay collection agency (comparable to the Division's role in the case at bar) from engaging a lawyer to represent a creditor-client (the mother in the instant case), the Division is actually participating in the unauthorized practice of law. In addition, the father suggests that to permit the Attorney General to represent the mother in these proceedings to increase, rather than merely enforce, Court-ordered child support obligations is to permit the use of public monies for private purposes.

The issue is a touchy and delicate philosophical and political one. It boils down to determining the extent to which the government, through its legal staff, should become involved in securing the redetermination before a court of the rights of individual citizens when the one for whom it speaks is no longer eligible for public assistance. There is no question here that the government can seek the enforcement of rights already determined under the Public purpose of keeping people off the welfare rolls. But the point at issue goes beyond that. Is the Attorney General of the Commonwealth to become the lawyer for citizens not eligible for public assistance who might want to seek an increase in the amount of Court-ordered support?

There are legal aid societies or committees of the private bar available to assist Mrs. Turner in her efforts to obtain an increase. For the Attorney General, however, to stretch its functions and responsibilities beyond that of enforcement, which would appear to be the limitation of § 63.1-287(8), would be to

open the floodgates for the Attorney General to appear in countless divorce cases where an increase in child support is sought.

On philosophical and political grounds, then, the Court is sympathetic with the arguments advanced by Mr. Kennett on behalf of Mr. Dennis. It seems to me almost basic that if Mrs. Turner is not eligible for public assistance, she is not eligible for public [legal] assistance. If it has already been determined that Mrs. Turner does not now qualify for A.D.C., what different standards apply which make her eligible for free' legal service?

But there is more involved here than philosophies perhaps old-fashioned. A trial Court sits to interpret the law as it is, not as he thinks it should be. A full reading of Chapter 14 of Title 63.1 (Sections 63.1-275 to 289.2) leads to the conclusion that Mr. Dennis's motions must be denied. Section 63.1-276, for instance, in giving the Department rights of subrogation, provides, in part:

> The Department shall have the right to petition the appropriate court for modification of a court order on the same grounds as either party to such cause.

§ 63.1-281, in defining the powers of the Department through the Commonwealth's Attorney (which § 63.1-289 and 289.1 permit to be transferred to the Attorney General's office), authorizes the Commonwealth's Attorney to:

> (3) Appear on behalf of the parent of a dependent child or children on whose behalf public assistance is being provided, when so requested by the parent, for the purpose of assisting the parent in securing a modification of a divorce or separate maintenance wherein no support, or inadequate support was given for such child or children or parent;

The proviso in this statute which follows authorizing such appearance only where it appears to the satisfaction of the Court that the parent is without funds to employ private counsel is a factual requirement that must still be satisfied.

Further, § 63.1-281 also provides that:

(4) If public assistance has been applied for or granted on behalf of a child of parents who are divorced or legally separated, (the Commonwealth's Attorney is authorized to) apply to the Court in such action for an order directing either parent or both to show cause:
(a) . . .
(b) Why the amount of support previously ordered should not be increased, . . .

§ 63.1-287, upon which Mr. Dennis relies, authorizes, among other things, the establishment of a central unit to serve as a registry for the receipt of information and then itemizes that unit's "primary functions." It should be noted that what follows in the statute are functions primary, not exclusive. One of those functions (paragraph (8)) directs that the services of such unit be provided for "support collection and paternity determination to any individual who is ineligible for such services as a recipient of public assistance" and further provides that a fee should be charged therefor in accordance with an appropriate fee schedule.

Mrs. Turner is apparently exempt from paying any such fee because she applied for such nonpublic assistance services within thirty days of the closing of her public assistance file (see Stipulation of Facts and attachment 6).

If the Department, rather than Mrs. Turner, was seeking the increase in child support, then the argument that this paragraph (8) limits the Department's activity to enforcement only would be more persuasive. But since the mother is now seeking the increase in

her own right, then the other services of the Department as set forth throughout Chapter 14 of Title 63.1 would appear to be available to her.

The case of Richmond Association of Credit Men, Inc., supra, is clearly distinguishable from the case at bar. Here we are dealing with a public agency with its own house counsel authorized on behalf of the children of this Commonwealth to seek to meet their financial needs. We are not concerned with a lay collection agency practicing law, whether unauthorized or not; nor in such agency procuring a lawyer for its customer. The legislature by statute has authorized the Commonwealth's Attorney or the Attorney General to act not only for the Division but for the caretaker; there is no comparable statute giving lay collection agencies any such rights: Richmond Association of Credit Men, Inc. is simply not applicable.

Both sides apparently rely on Missouri v. Leet, 624 S.W.2d 21 (Mo. 1981). In that case Carol Leet had been awarded $50 a month in 1967 for child support. Her former husband, Jack Leet, made no payments for child support after 1971. She contacted the Welfare Department, who referred her to the prosecuting attorney. He moved the Court to hold Mr. Leet in contempt for failure to make any payments for child support since 1971. Mrs. Leet was not receiving A.F.D.C. and applied for "non-A.F.D.C." assistance, paying a fee for such services in the amount of $60.

Mr. Leet contended that the representation of his former wife by the state prosecutor constituted an improper granting of public money to a private person in violation of Missouri's constitution, which provided, in part:

> The General Assembly shall have no power to grant public money . . . to any private person . . . excepting . . . for aid to dependent . . . children . . . .

The exception was held inapplicable, however (see Footnote 4). The decision in favor of the government's

Footnote 4). The decision in favor of the government's participation was based on other grounds.

Other Missouri cases had interpreted this constitutional provision to permit the use of public money for a public purpose. After analyzing certain Missouri cases, the Court in Leet concluded that what constituted a "public purpose" was primarily a legislative function and that child support enforcement laws, including the provision that the state provide such services to non-A.F.D.C. as well as A.F.D.C. families, was a public purpose. The Court observed at P. 23:

> Such assistance constitutes a secondary private benefit to those receiving the support, but as stated in State ex rel. Jardone v. Industrial Development Authority, 570 S.W.2d 666, 675 (Mo. banc 1977), "The consensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classed as involving a public purpose."

The Leet decision, of course, is clearly distinguishable from the case at bar. Mr. Leet was in default in his child support payments; Mr. Dennis is not. Virginia does not have an article comparable to Art. III, § 38(a) of the Missouri Constitution. Mrs. Leet paid a fee for non-A.F.D.C. assistance; Mrs. Turner did not. And, most significantly, it was the enforcement of a child support order being sought, not an increase in the amount. Nonetheless, the principle of "public purpose" comes forth loud and clear. The "public purpose" involved in the instant case is the determination made by our legislature to continue to allow a former A.D.C. recipient, who is still eligible for food stamps, to receive the legal assistance of the Department (where she cannot afford private counsel) in obtaining an increase in child support payments.

The wisdom of such legislation may be questioned; the mandate to permit it is rather clear. Accordingly, the motion of Mr. Dennis to strike Mrs. Turner's peti-

tion, upon her showing that she cannot afford private counsel, will be denied.

Ms. Hickey [special assistant attorney general] should submit an order in accord with this opinion and schedule a hearing at the time of its presentation in order to demonstrate that Mrs. Turner cannot afford private counsel.