Harry Swirsky, Appellee, v. Rose Horwich, etc., Appellant.

Gen. No. 42,686.

Opinion filed November 17, 1943.  Rehearing denied December 27, 1943.

I. Archer Levin, of Chicago, for appellant.

Spitz & Adcock, of Chicago, for appellee; Edward Blackman, of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.

On February 26, 1938 Harry Swirsky and Irwin Horwich, by oral agreement, formed a partnership for the purpose of dealing in new and used automobile and truck parts, tires and waste materials. Pursuant to the oral agreement, on March 1, 1938, the partners purchased from J. E. Kramer the going business, including assets and good will, known as the Englewood Auto Parts, located at 6514-30 S. State street, Chicago. The purchase price was $17,500. The partners paid Mr. Kramer $4,000 in cash, each contributing $2,000. The balance of the purchase price, namely, $13,500 was to be paid by the partners in instalments of $1,000 within 30 days and $100 per month thereafter, with interest at 5 per cent per annum, the indebtedness being secured by a chattel mortgage. They agreed that each would devote his full time to the business, contribute equal investments and that the profits and losses would be divided equally. Harry Swirsky was married to Estelle Swirsky and Irwin Horwich was married to Rose Horwich. The partners continued to conduct the business thus acquired under the trade name of Englewood Auto Parts and at the same location, namely 6514-30 S. State street, Chicago, which premises were occupied under a leasehold. On March 15, 1939, they purchased the real estate located at 6546-48 S. State street, situated a short distance south of the premises where the business was being conducted. The

purchase price was $3,000, of which $500 was paid by the partners. The balance of $2,500 was borrowed from Nathan Benditzson. Title was taken in the name of Isadore Benditzson in order to secure Nathan Benditzson for the amount advanced. Irving Greenfield, an attorney, who represented the copartners in the transaction, collected the rents and made distribution of the surplus, including payments to Nathan Benditzson on account of the $2,500 so borrowed from him. Irwin Horwich died on November 22, 1940, and his widow Rose was appointed administratrix of his estate.

On January 17, 1941, Harry Swirsky filed a verified complaint in chancery in the superior court of Cook county against Rose Horwich, individually and as administratrix of the estate of Irwin Horwich, deceased, Isadore Benditzson, Irving Greenfield, Mutual Life Insurance Company of New York, Metropolitan Life Insurance Company, Equitable Life Assurance Society of the United States and New York Life Insurance Company. Paragraphs 7, 8, 9 and 10 of the complaint read:

"Par. 7. That on or about the 27th day of December, 1938 said co-partners agreed to and did purchase $20,000.00 worth of life insurance with the Mutual Life Insurance Company of New York; that each individual partner was the insured of $10,000.00 of said life insurance and each individual partner designated the beneficiary of said policy; that at said time the said co-partners agreed that in the event of the death of either co-partner the sum of $10,000.00 or whatever other sum would be payable to the deceased partner's beneficiary upon said insurance policy would be credited to the co-partnership and that thereafter said co-partnership's net assets including the credit of said $10,000 or any other sum so credited for insurance would be divided equally between the surviving partner and the deceased partner's heirs or beneficiaries, and that the proceeds of any additional insurance there-

after purchased by said co-partnership would likewise upon the death of either partner be credited to said co-partnership business as aforesaid.

"Par. 8. That on or about July 19, 1940 said co-partners agreed to and did purchase additional insurance hereinafter mentioned; on said date the total life insurance of which each partner was the insured was as follows:

### Irwin Horwich

| Name of Insurance Co. | No. of Pol. | Amt. of Ins. | Amt. of Prem. |
|---|---|---|---|
| New York Life Insurance Company | 12146571 | $2,000.00 | $44.98 |
| Metropolitan Life Insurance Company | 11432997 | 2,500.00 | 57.50 |
| Mutual Life Insurance Co. of New York | 5447992 | 10,000.00 | 281.30 |
| Equitable Life Assur. Society of U. S. | 11175479 | 2,500.00 | 95.28 |
| | | $17,000.00 | $479.06 |

### Harry Swirsky

| Name of Insurance Co. | No. of Pol. | Amt. of Ins. | Amt. of Prem. |
|---|---|---|---|
| Metropolitan Life Insurance Company | 6561794 | $1,000.00 | $16.95 |
| Metropolitan Life Insurance Company | 11919570 | 1,825.00 | 60.00 |
| Mutual Life Insurance Co. of New York | 5447632 | 10,000.00 | 259.10 |
| Equitable Life Assur. Society of U. S. | 11175487 | 4,000.00 | 151.16 |
| | | $16,825.00 | $487.21 |

that said partners further agreed at said time that in the event of the death of either partner that the insurance proceeds payable to the deceased partner's beneficiary as designated in this paragraph would be

in full payment of the interest of the deceased or his heirs or beneficiary in and to the said co-partnership business and assets, the surviving partner assuming and agreeing to pay all liabilities of said co-partnership; that said agreement further provided that the legal representative of said deceased partner would execute a Bill of Sale or some other document to convey to the surviving partner all interest in said co-partnership; that said agreement of the co-partners superseded the agreement described in paragraph 7 herein; that after the death of said Irwin Horwich on November 22, 1940 this plaintiff, who is the surviving co-partner, requested Rose Horwich, his legal representative, to execute a Bill of Sale to the plaintiff in accordance with the agreement described aforesaid, but she refused to do so and still refuses so to do.

"Par. 9. That on or about the 15th of March, 1939 the said co-partnership purchased the following described real estate, to-wit: The South 50 feet of the North 52 feet of Lot Four (4) in Block Eleven (11) in Skinner and Judd's Subdivision of the Northeast Quarter of Section Twenty one (21), Township Thirty eight (38) North, Range Fourteen (14), East of the Third Principal Meridian, Cook County, Illinois, also known as and described as 6546-48 South State Street, Chicago, Illinois; that the property was taken in the name of Isadore Benditzson, one of the defendants herein; that upon the death of said Irwin Horwich on the 22nd day of November, 1940 title to said real estate immediately vested in and belonged to the plaintiff in accordance with the agreement heretofore described in paragraph 8; that said real estate was purchased for the sum of $3,000.00, $500.00 thereof was paid on account by said co-partnership business and the balance of the purchase price was borrowed from Nathan Benditzson; that payments were made on account of said monies due and owing to said Nathan

Benditzson from time to time out of the net proceeds of the operation of said property, the exact payments of which are unknown to this plaintiff; that request has been made of said Isadore Benditzson to convey said real estate to this plaintiff but up to date he has refused so to do.

"Par. 10. That Irving Greenfield, an attorney at law, represented said co-partnership business in con- nection with the purchase of the real estate described in paragraph 9 hereof; that since the purchase of said real estate the said Irving Greenfield has been collect- ing the rents and making distribution for expenses in connection therewith and also making payments due to Nathan Benditzson; that plaintiff has requested an ac- counting from the said Irving Greenfield in connection with the operation of said property but up to date he has refused to render this plaintiff an accounting of his acts and doings from the date of the purchase of said property to the present date hereof."

Plaintiff prayed that the court enter a decree finding that upon the death of Irwin Horwich he (plaintiff) be- came the sole owner of all of the partnership business known as Englewood Auto Parts; that the rights of plaintiff in and to the insurance proceeds payable to Mrs. Horwich be adjudicated; that she in her individ- ual capacity and as administratrix be directed to execute a bill of sale conveying to him (plaintiff) all of the assets and good will of the business and that upon her failure so to do the court direct a master in chancery to do so; that Isadore Benditzson be directed to execute and deliver to him (plaintiff) a deed con- veying the real estate described in paragraph 9; that upon his failure so to do that a master in chancery be directed to do so; and that Irving Greenfield be re- quired to account to plaintiff for all income and dis- bursements made in connection with the real estate.

Plaintiff made an affidavit that he had read the complaint by him subscribed, knew the contents and that "the same is true in substance and in fact."

Rose Horwich, individually and as administratrix, Isadore Benditzson and Irving Greenfield filed a motion to strike and dismiss the complaint. The chancellor, after hearing arguments, entered an order that the complaint, and particularly paragraphs 7 and 8 thereof (setting forth the alleged oral agreements between the parties as to the insurance) did not set up a cause of action affecting the right of Mrs. Horwich to receive the proceeds from all of the life insurance policies issued on the life of her deceased husband, in which policies Mrs. Horwich was named as beneficiary; that Mrs. Horwich was entitled to the proceeds of the policies without compromising, releasing or waiving any of her rights as the widow and heir-at-law of Irwin Horwich, and unaffected by the alleged oral agreements pleaded in paragraphs 7 and 8 of the complaint. The order struck the complaint so far as it attempted to set forth a claim in favor of plaintiff (the surviving partner) against the proceeds of the life insurance policies on the life of Irwin Horwich described in paragraph 8 of the complaint, in which Mrs. Horwich was named as beneficiary, and so far as it was proposed to charge or affect the proceeds of such policies and the rights of Mrs. Horwich as beneficiary therein. The defendants were required to answer within 10 days. The clerk was directed to pay to Mrs. Horwich the proceeds of the insurance policies on the life of her deceased husband, which sums had theretofore, pursuant to order of court, been deposited with him. This was done and the insurance companies were dismissed from the case. The answer of Mrs. Horwich, individually and as administratrix, admitted the allegations of the complaint relating to the formation of the partnership, the purchase of the partnership business, the terms of the purchase, the

death of her husband and her appointment as administratrix. The answer further admitted the purchase by Irwin Horwich of the $10,000 life insurance policy on his life on or about December 27, 1938, in which she was named as beneficiary, and also admitted the purchase of all other policies mentioned in the complaint on the dates the respective policies bore, by Irwin Horwich, in which she was also named as beneficiary, and stated she had no information as to the policies alleged to have been purchased by plaintiff. She admitted the purchase of the real estate by the partners and the terms of the purchase, and denied the allegations relating to any and all oral agreements alleged to have been entered into between plaintiff and Irwin Horwich affecting the proceeds of any and all insurance policies on the life of Irwin Horwich, and his interest in the partnership business and assets at his death, and denied that plaintiff was entitled to the relief prayed. She also asked that the complaint be dismissed for want of equity and for failure to set forth a cause of action as more specifically set forth in the motion to strike.

The answer of Isadore Benditzson admitted he held title to the real estate for the two partners to secure the balance of the purchase price due to Nathan Benditzson, and stated there was a balance due of $873.20 on the original loan of $2,500. The answer of Irving Greenfield admitted that he collected the rents from the real estate and stated that from such rents he had been paying the necessary expenses in connection with the operation and maintenance of the real estate, and the sum of $1,626.80 on account of the loan from Nathan Benditzson. The cause was referred to a master in chancery, who, after hearing the evidence made his report finding the equities in favor of plaintiff and recommending the entry of a decree granting the relief prayed. Following the filing of objections to the report, the master filed a supplemental report.

The master then overruled all objections to the report and supplemental report. The chancellor allowed the objections to stand as exceptions. He entered a decree sustaining the master's findings and recommendations. This decree, among other things, found that an oral agreement existed between Harry Swirsky and Irwin Horwich as partners relating to the insurance; that the agreement was made on or about December 27, 1938, when $10,000 in life insurance was procured on the life of each partner; that the oral agreement provided that upon the death of either partner the life insurance of such partner would be paid to the deceased partner's heirs or beneficiary and that the surviving partner would take the partnership business and assets free from any claim of the deceased partner's heirs, but subject to the partnership debts; that on or about July 22, 1940 additional insurance was purchased under the same oral agreement and that the insurance on the life of each of the partners which they had prior to entering into the partnership was also brought into the agreement. The decree further found that oral agreements of partnership or between the partners are not within the statute of frauds; that there was ample consideration for the agreement; that the oral agreement did not amount to a testamentary disposition of the interest of the deceased partner in the partnership business and was not void for failure to comply with the statute of frauds; that the agreement amounted to an executory agreement to be performed upon the death of one of the partners and determined the rights of the parties in and to the partnership property and was founded on good consideration. The decree further found that Irving Greenfield managed the property at 6546–48 S. State street, Chicago; that he filed his account showing the receipts and disbursements for the period ending December 15, 1941; that no objections were filed to the account; that the ac-

count showed receipts of $2,341.26 after payment of all operating expenses, that $1,500 had been paid upon the principal balance of $2,500 due to Nathan Benditzson, and that interest in the amount of $372 was also paid; that there was then due to Nathan Benditzson, on account of moneys advanced to the partnership for the purchase of the property, the sum of $1,000, together with interest; that Irving Greenfield had on hand a balance of $469.26, which should be paid to Nathan Benditzson in further reduction of the amount due to him. The decree overruled the exceptions to the report and found the issues in favor of plaintiff and directed that the partnership business, including all of the assets, belonged to the surviving partner Harry Swirsky as of November 22, 1940, the date of the death of Irwin Horwich, subject to the payment of all partnership liabilities and free from any claim on the part of Mrs. Horwich, as administratrix, and the heirs of Irwin Horwich, deceased. Mrs. Horwich, as administratrix, was directed to convey all her interest in and to the partnership property to plaintiff. The decree further found that the real estate purchased by the partners became the property of the surviving partner on November 22, 1940, and defendant Irving Greenfield was ordered to pay the sum of $469.26, together with any other sum collected by him in the management of the property since December 15, 1941, to Nathan Benditzson, to apply on the balance of $1,000 due the latter. The court retained jurisdiction of Rose Horwich, as administratrix, Irving Greenfield and Isadore Benditzson for the purpose of enforcing the decree. Rose Horwich, as administratrix of the estate of Irwin Horwich, deceased, appealed to the Supreme Court. That court decided that a freehold was not involved and transferred the case. (*Swirsky v. Horwich*, 382 Ill. 468.)

Defendant urges that plaintiff did not prove the alleged oral agreement between himself and Irwin

Horwich relating to their insurance and to the disposition of a deceased partner's interest in the partnership business and assets as found by the decree. Plaintiff asserts that there was an oral agreement between the partners which provided that in the event of the death of either partner the deceased beneficiaries or heirs would get the insurance and the surviving partner would get the business. Plaintiff, being a party in interest, was not permitted to testify in his own behalf with respect to the alleged oral agreement relating to insurance. In paragraph 7 of the sworn complaint, however, plaintiff states that on or about December 27, 1938 "said co-partners agreed that in the event of the death of either partner the sum of $10,000.00 or whatever other sum would be payable to the deceased partner's beneficiary upon said insurance policy would be credited to the co-partnership and that thereafter the said co-partnership's net assets including the credit of said $10,000.00 or any other sum so credited for insurance would be divided equally between the surviving partner and the deceased partner's heirs or beneficiaries, and that the proceeds of any additional insurance thereafter purchased by said co-partnership would likewise upon the death of either partner be credited to said co-partnership business as aforesaid." It will be observed that the master found that the agreement of December 27, 1938 provided that upon the death of either partner the life insurance of such partner would be paid to his heirs or beneficiaries and the surviving partner would take the partnership business and assets free from any claim of the deceased partner's heirs, but subject to partnership debts. The finding of the master is not consistent with the allegations of the verified complaint. The master also found that on or about July 22, 1940 additional insurance was purchased under the same agreement. It appears that the master's report and the decree do not have in view the oral

agreement of December 27, 1938, stated in paragraph 7 of the complaint as superseded by the alleged oral agreement of July 19, 1940, which it was alleged "superseded the agreement described in paragraph 7." We agree with defendant that the sworn statements in the nature of admission contained in the complaint, should be given due weight in determining the equities. It was not necessary that these statements be introduced into evidence. They are a part of the pleadings. The plaintiff swore that he read the complaint, knew the contents and that "the same is true in substance and in fact." The evidence offered by plaintiff to prove the oral agreement consisted of the testimony of a number of witnesses as to statements and declarations alleged to have been made to them at different times by Irwin Horwich. None of these witnesses was present at the time the alleged oral agreement was made and no one heard the conversation between the partners in which the terms and conditions of the agreement were stated or discussed. We agree with the assertion of defendant that the declarations and statements alleged to have been made to these witnesses by the deceased partner do not fix the time, place, terms or conditions of the alleged agreement, either as set forth in the complaint or as found by the decree, and do not refer to the existence of such an agreement except by innuendo or by recollections on the part of such witnesses. We also agree that the statements by these witnesses are vague, indefinite and incomplete, and taken either severally or as a whole, do not establish the existence of the oral agreement as found by the decree. All of the policies were written on the individual lives of the respective partners, each named his benficiaries in his respective policies and each policy is payable to such beneficiaries unconditionally and without reference to any partnership business. The testimony of Ralph Brusslan and Cecil Alexander, insurance brokers,

tended to support the alleged agreement on which plaintiff now relies. It is significant that both of these witnesses testified that the partners had each of them write up a form of agreement relating to the insurance. Brusslan testified that he delivered this form to the partners and that they told him they would take it up with their attorney. Cecil Alexander stated that he delivered the form drawn up by his own attorney to the deceased partner and that the latter told him he wanted to show it to the "company's attorney." Irving Greenfield, attorney for the partnership, testified that both forms of agreement were submitted to him by Irwin Horwich; that he examined each of them and advised Mr. Horwich not to sign either of them and that he (Horwich) told witness that he would not sign them. The partners undoubtedly discussed taking out some kind of partnership or business insurance, or transferring the insurance they had to that form of insurance. The fact that the forms of agreement providing for partnership insurance were not signed, particularly after attorney Greenfield was consulted, supports defendant's position that the minds of the parties did not meet on the terms of an oral agreement as to the disposition of the partnership assets and the insurance on the death of either partner. The premiums on the insurance policies, though paid for by partnership checks, were charged to the individual partners, the same as their drawing or expense accounts. This tends to support defendant's contention. W. E. Brown, the bookkeeper of the partnership, testified as to a credit statement dated September 16, 1939, received in evidence as plaintiff's Exhibit 10, given to the Chicago City Bank & Trust Company. He prepared the statement at the request of both partners on the date it bears. In the blank space relating to life insurance he filled in "$20,000" and showed the Englewood Auto Parts as beneficiary. He testified that he obtained this in-

formation from both partners; that between January and March 1939, he had a discussion with both partners with respect to charges on their books for insurance premiums on this "particular policy"; that he was asked by both partners to charge it as business expense; that at that time he did not know how to handle it and called the Internal Revenue Bureau in the presence of the partners for its suggestion as to the disposition of the matter, and was told that it could not be deducted for income tax as it was life insurance; that the Internal Revenue office asked if the policies were on the lives of the individual partners and witness stated they were; that he then asked "in regard to the insurance on the lives of the partners, whereby the business was charged with the partnership premiums," and was told that as it was not business insurance he could not deduct it for tax purposes. He charged it to the partners' drawing accounts and that was the way it was carried on the books of the partnership. The balance sheet of the partnership business as of November 22, 1940, the date of the death of Irwin Horwich, does not mention any partnership life insurance or life insurance on the lives of the individual partners, or the real estate as partnership assets. Mr. Brown also testified that the books kept by him for the partners from the time he began working for them did not disclose any partnership insurance. Exhibit 10 is the strongest bit of evidence supporting plaintiff's contention. The fact remains, however, that while this exhibit refers to insurance of $20,000, with the Englewood Auto Parts as beneficiary, there was not at any time a policy of life insurance payable to the Englewood Auto Parts, as beneficiary, or in the sum of $20,000.

In appraising the testimony of the witnesses it is timely to bear in mind the rule that a court of equity will not decree the specific performance of a contract which depends upon oral testimony for its existence un-

less the proof is clear and explicit that such contract was made, and the contract itself must be certain and all of its terms clearly proven, and it must be founded upon a valuable consideration. We are satisfied that plaintiff has not proven the alleged oral agreement between himself and Irwin Horwich relating to their insurance and to the disposition of a deceased partner's interest in the partnership business and assets. The evidence submitted falls far short of proving the alleged oral agreement with the certainty required to entitle him to specific performance as prayed. The Supreme Court found that the real estate was partnership property and that the interest of each partner in the partnership property, including lands, is the balance found to be due to him after the payment of all partnership debts and the adjustment of the partnership accounts between himself and the copartner.

Because of the views expressed the decree of the superior court of Cook county is reversed and the cause remanded with directions to dismiss the complaint for want of equity at plaintiff's costs.

*Reversed and remanded with directions.*

KILEY, J., concurs.

HEBEL, P. J., took no part.