In re the Marriage of Joann Elizabeth
WILLS, Appellant,

v.

Robert Eugene WILLS, Respondent.

No. 53446.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 5, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 6, 1988.

Application to Transfer Denied
June 14, 1988.

Richard Mark Goldstein, Cape Girardeau, for appellant.

Marsha Brady, Hillsboro, for respondent.

SIMEONE, Senior Judge.

### I.

This is an appeal by appellant, Joann Elizabeth Wills, the former wife of respondent, Robert Eugene Wills, from an order of the circuit court of St. Francois County which sustained respondent's motion to quash a garnishment of funds requested by appellant from a "partnership" account. Appellant requested a garnishment in aid of execution for arrearages of child support. The trial court sustained a motion to quash filed by respondent because (1) "partnership" property is not subject to garnishment for the individual debts of a partner under § 358.250.2(3), R.S.Mo., 1986; and (2) such funds "are not property held in a form of joint interest under Section 454.528 RSMo", even though appellant sought to garnish the funds for arrearages of child support under the Child Support Enforcement Act of 1986, §§ 454.400–454.-528 R.S.Mo., 1986. We affirm in part and reverse in part and remand with directions.

### II.

On September 22, 1983, appellant-wife filed a petition for dissolution of marriage against her husband, Robert Eugene Wills, and sought child support for a child. On December 16, 1983, the circuit court, *inter alia,* (1) ordered a dissolution of the marriage; (2) awarded custody of the parties' minor child, Kevin Ray Wills, to the appellant; (3) directed respondent-husband to pay $345.00 per month for child support; (4) divided the marital property; and (5) directed husband to execute a wage and income assignment. The wage assignment was filed with the court. In 1985, the court reduced the amount of child support to $300.00 per month. From the record it appears that respondent, prior to this proceeding, was delinquent in making child support payments which necessitated judicial proceedings.

The subject of these proceedings began on March 3, 1987, when appellant-wife sought garnishment in aid of execution. On that date she filed her request for "execution, garnishment or sequestration" in the amount of $4,126.97 for arrearages of child support payments. The garnishment was directed to the Boatmen's Bank of Jefferson County and directed the sheriff to "Garnish any personal account (and also Rainbow Lounge which AP [absent parent] also owns" at the Bank.) Garnishment was served on the bank on March 16, 1987.

On March 20, 1987, respondent filed his motion to quash the garnishment denying that he was in arrears through October, 1985, that the child, Kevin, had not lived with the appellant-wife since that time, and that since October, 1986, the child has been emancipated. The motion further alleged that the funds in deposit with the bank were "partnership" funds and as such were not subject to garnishment. Respondent moved the court to enter its order quashing the garnishment.

Prior to the hearing on the motion to quash, counsel for the respective parties agreed to authorize the bank to release one-half of the funds in the account which had been garnished and to deposit such funds, in the amount of $1,486.78, into the registry of the court pending the hearing and determination of the motion to quash.

On May 18, 1987, a hearing was held on the motion. Various witnesses, including appellant, respondent and their son, Kevin, testified. The testimony centered around with whom and when Kevin lived over a period of time, and the amounts paid by respondent to his son, to appellant and to others.

During the hearing, respondent testified that he was and had been in "partnership" with Joseph (Joe) Janos, in the "Rainbow Lounge" since July 4, 1985. He testified that the Rainbow Lounge did its banking at Boatmen's in Pevely, by means of a checking account in the name of the Rainbow

Lounge, and that either he or Janos could sign checks on the account. The money that "goes into the account" comes "out of the lounge," and "it's all business money." He testified that when the garnishment "hit" the bank, "it about put me out of business." When asked if he and Janos had a written partnership agreement, Wills replied "Yes, we do," but he did not have the written agreement with him at the hearing.

On May 29, 1987, the trial court entered its order. The court found (1) that the minor child was not emancipated; (2) respondent's child support arrearages amounted to $2,877.00 after giving credit for amounts paid for the benefit of the child; (3) the sum of $1,486.78 paid into court under the garnishment was "from a partnership account,"; (4) that "partnership property is not subject to garnishment for the individual debts of a partner under Section 358.250.(2)(3),"; and (5) "said funds are not property held in a form of joint interest under Section 454.528 RSMo." The court, therefore, granted the motion to quash the garnishment and directed the clerk to return the funds paid into court to the partnership account at the bank.

### III.

In due time appellant-wife appealed. No appeal is taken from those portions of the trial court's order as to the amount of arrearages or that the child has not been emancipated. The only issue appealed is the order granting the motion to quash because the funds were held to be "partnership" funds.

On appeal, appellant contends that the trial court erred in quashing the motion because (1) there was no substantial evidence to show that a "partnership" existed between respondent and Janos and in the alternative (2) that if there was substantial evidence to show a partnership, § 454.528, R.S.Mo., 1986 of the Child Support Enforcement Act prevails over § 358.250.2(3) which provides that a partner's right in specific partnership property is not subject to execution except upon a claim against the partnership.

The respondent contends that the trial court did not err because the bank account was a partnership asset which is not subject to execution, and that the proper and exclusive procedure is to follow the provisions of § 358.280, which authorizes the court to "charge" the interest of the debtor-partner with the payment of the unsatisfied amount of the judgment debt.

Appellant argues that the provisions of § 454.528 of the Child Support Enforcement Act prevail over § 358.250 for the reasons that (1) the plain language of § 454.528 makes that section applicable to garnishment in aid of execution of the interest a partner has in a partnership, despite § 358.250.2(3); (2) § 454.528 should be construed to effect its remedial purpose of enforcing judgments for child support; and (3) § 454.528 is a specific statute relating to enforcement of child support, while § 358.250 is a general statute which should be subordinated to the specific.

### IV.

This appeal, therefore, involves the delicate balancing of the express provisions of Missouri's Uniform Partnership Law as embodied in § 358.250.2(3), the Child Support Enforcement Act as embodied in § 454.528 and the Dissolution Law, § 452.140 so as to determine whether one partner's interest in a partnership is subject to execution to enforce a judgment for his arrearages for child support.

Section 452.140 provides in pertinent part that:

> No property shall be exempt from attachment or execution in a proceeding instituted by a married woman for maintenance, nor from attachment or execution upon a judgment or order issued to enforce a decree for alimony or for the support and maintenance of children.

Section 454.528 provides in relevant part that:

> 1. The interest of one or more owners of any real or personal property held in joint tenancy with right of survivorship, *or otherwise held in any form of joint interest,* except for property held in the

name of a husband and wife *and no other,* are [sic] subject to execution as provided in this section for the sole purpose of enforcing judgments or orders for child support or maintenance.

\* \* \* \* \* \*

3. Any party in possession of a judgment or order for child support or maintenance may request levy and execution from a court of competent jurisdiction against real or personal property owned by the obligor [a person who owes a duty of support] jointly with another person as provided in this section. Unless one or more of the joint owners presents to the court, within ten days after the return date of the execution, *a true copy of a prior written agreement* setting forth the various interests of the joint owners, or the court determines otherwise after holding a hearing ..., *it shall be presumed that the interests of the joint owners are equal.* Upon levy, the execution shall constitute a lien against the obligor's presumed interest in the property. Any one or more of the joint owners may obtain relief from the lien by filing with the court a copy of a prior written agreement setting forth the various interests of the joint owners, without the necessity of filing a petition under subsection 5 of this section. (Emphasis added).

Section 358.250 of the Uniform Partnership Law provides in pertinent part that:

1. A partner is co-owner with the partners of specific partnership property holding as a tenant in partnership.

\* \* \* \* \* \*

2. (3) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership.

Section 358.260 provides that "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

Section 358.280 provides that on "due application to a competent court" by any "judgment creditor" of a partner, the court may "charge" the interest of the debtor partner with payment of the judgment and may then or later appoint a receiver of his share of the profits.

The principles of statutory construction have often been stated and are well-known. The primary rule is to ascertain the intent of the lawmakers from the language used and to consider words in their ordinary meaning in the light of the legislative objective. See *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 401 (Mo. banc 1986); *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo.1983) (comprehensive list of principles). In construing statutes, courts are obliged to reconcile and harmonize statutes that appear in conflict if it is reasonably possible. *Goldberg v. Administrative Hearing Commission,* 609 S.W.2d 140, 144 (Mo.App.1980); *Dover v. Stanley,* 652 S.W.2d 258, 263 (Mo.App. 1983). Tested by these principles we believe that the provisions of the Child Support Enforcement Act, § 454.528 and the provisions of the Uniform Partnership Law, § 358.250.2(3) may be harmonized, so that each Act is applicable to the objectives sought to be remedied.

### V.

In 1984, the Congress of the United States adopted P–L 98–378, the "Child Support Enforcement Amendments of 1984" as amendments to Part D of Title IV of the Social Security Act. See 1 U.S.Code Congressional and Administrative News, 98 Stat. 1305, 42 U.S.C.A. § 651 *et seq.* The Congressional enactment is a comprehensive series of statutes to strengthen child support enforcement and paternity establishment programs authorized by Title IV–D of the Social Security Act. Citing studies that have been done on the subject of nonsupport of children, the Committee commented:

The enforcement of child support obligations is not an area of jurisprudence about which this country can be proud. 4 U.S.Code Cong. and Adm.News, 2397, 2401 (98th Cong. Second Session 1984).

The Congress found in Sec. 23 of P–L 378, that there is a critical lack of child support enforcement which Congress has

undertaken to address through the child support enforcement program, and that state and local governments must focus on the vital issues of child support within the jurisdiction of such governments. Congress recognized the national and state seriousness of child support to the "health and welfare of our nation's children and assigns them the highest priority." 1 U.S. Code Cong. and Adm.News, 98 Stat. 1329–1330 (98th Cong. Second Sess.1984). Congress required that the states perform the basic responsibility in this area of child support and required each state to develop plans and statutes to deal with this societal problem.

In 1986, the General Assembly, responding to this growing crisis in child support, adopted the Child Support Enforcement Act, §§ 454.400–454.528, R.S.Mo., 1986. In many respects the Missouri Act tracked the provisions and requirements of the federal enactment, but in many respects, our General Assembly went beyond the provisions of the federal act. H.B. 1479, Laws, 1986 p. 1052. HB 1479 is an act relating to "establishing and enforcing support obligations." It was adopted to establish and enforce support obligations. The primary thrust of the Missouri Act is to provide a tool for enforcement measures by which the state, acting through the Division of Child Support Enforcement of the Department of Social Services, prosecuting attorneys, or attorneys in cooperation with the Division, can require errant or absent parents who receive public assistance to fulfill their parental responsibilities:[1] The Act is primarily applicable to those situations where there has been an assignment of support payments to the state of Missouri pursuant to § 208.040[2] or where the Missouri Division of Child Support Enforcement is providing "support enforcement services" pursuant to §§ 454.425 and 452.-345.1. The Act is also applicable to persons who are not on public assistance. The Act requires the Division of Child Support

Enforcement to render services to persons who are not recipients of public assistance. See § 454.425.

While this is the primary thrust of the Missouri Child Support Enforcement Act, we believe that the Missouri Act is not only the state's response to the Congressional Act to enforce the state's rights to enforce and collect child support payments, but it also establishes, in certain respects, the General Assembly's response to the societal issue of nonsupport payments for children of divorced parents who are not on public assistance. While the Missouri Act generally follows the federal law, our General Assembly added certain provisions not found in the federal legislation or the requirements of Congress. Section 454.528, for example, was adopted although there is no such provision in the federal law. That section expressly provides that the interest of one or more owners of "any" real or personal property held in "joint tenancy" or "otherwise held in any form of a joint interest" except for property held by husband and wife "and no other" is subject to execution provided "in this section" [not in this Act] for the sole purpose of enforcing judgments or orders for child support or maintenance. See *Farmer v. Miller*, 746 S.W.2d 661 (Mo.App.1988). This section was therefore intentionally adopted to provide a remedy above and beyond a state remedy to enforce child support payments, and thus this section is not limited to enforcing such support only against those persons receiving public assistance. This section expressly authorizes execution generally upon any property owned in "joint tenancy" or held in "any" form of "joint interest" for the sole purpose of enforcing child support payments or maintenance, unless such property is specifically exempted by other statutes.

## VI.

The specific issues, however, which then must be resolved are (1) whether the part-

---

1. See §§ 208.040, 454.400, 454.420 (enforcement by prosecutor), 454.415, 454.505, 454.515, 454.-516, 454.517, 454.518, 454.519, R.S.Mo., 1986.

2. Section 208.040 provides in pertinent part that the Division of Family Services shall require, as

a condition of eligibility for aid to families with dependent children, that the applicant for such aid assign to the division "any rights to support from any other person ..."

nership law, § 358.250.2(3) exempts a partner's right in specific partnership property from execution except upon a claim against the partnership, and (2) whether the General Assembly in adopting the Child Enforcement Act, § 454.528 intended that section to apply to a partner's interest in specific partnership property, so that a partner's interest in partnership property is subject to attachment, garnishment or execution for child support. We look to the provisions of our Uniform Partnership Law to determine (1) whether that Law prohibits execution upon partnership property; (2) whether the "joint interest" stated in § 454.528 applies to a partner's interest in partnership property; and (3) whether the remedies provided in the Partnership Law are exclusive.

Before doing so, however, we briefly note that § 452.140 is not dispositive of this proceeding. While that section is specific, it was designed, and has been construed to mean that it operates to override any exemptions provided for by the exemption statutes. See §§ 513.425–513.470; *Davis v. Thompson,* 619 S.W.2d 754, 756 (Mo. App.1981); *Haizlip v. Haizlip,* 240 Mo. 392, 144 S.W. 851 (1912); *Anderson v. Norvell–Shapleigh Hardware Co.,* 134 Mo. App. 188, 113 S.W. 733 (1908); *Pugh v. St. Louis Police Relief Ass'n,* 237 Mo.App. 922, 179 S.W.2d 927 (1944); *Taylor v. Taylor,* 474 S.W.2d 859, 801 (Mo.App.1971). This statute was adopted for the purpose of overriding exemption statutes and was not designed to apply to specific business related statutes such as the Uniform Partnership Law.

Neither is *Patton v. Patton,* 573 S.W.2d 71 (Mo.App.1978), relied upon by appellant, controlling. *Patton* held that workers' compensation benefits were designed, at least in part, to aid the family as a unit. The court held such benefits subject to execution for child support. That is not the situation here where a specific business statute, § 358.250.2(3) expressly prohibits execution on partnership property except upon a debt of the partnership.

Under the Uniform Partnership Law as adopted in Missouri, § 358.250, a partner is a co-owner with the partners of specific partnership property "holding as a tenant in partnership." The Official Comment to the Uniform Partnership Act, 6 U.L.A. 327, states that:

One of the present difficulties in the administration of the law of partnership arises out of the difficulty of determining the exact nature of the rights of a partner in specific partnership property. That the partners are co-owners of partnership property is clear; but the legal incidents attached to the right of each partner as co-owner are not clear.

When the English courts in the early common law began to discuss the legal incidents of partners in partnership property, the concepts of joint tenancy and tenants in common were familiar. But these tenancies were not precisely applicable to partnerships. The attempt of the courts to escape inequitable results of applying the legal incidents of these tenancies to business partnerships produced "very great confusion." The Uniform Partnership Law therefore ended this confusion by creating a new type of tenancy—a tenancy in partnership. Under this tenancy, a partner is a co-owner with his partners of specific partnership property holding as a tenant in partnership and his interest is his share of the profits and surplus. *Kean v. Manning,* 128 F.Supp. 756, 758 (D.C.N.J.1955) (New York Law); *State v. Elsbury,* 63 Nev. 463, 175 P.2d 430, 432, 169 A.L.R. 364 (1946) (Uniform Partnership Act). Under the partnership law a "new kind of estate" —a tenancy in partnership is created. *Ewing v. Caldwell,* 243 N.C. 18, 89 S.E.2d 774, 777 (1955). The interest of the partners in partnership property is *sui generis* and is neither that of joint tenants nor of tenants in common. *Swirsky v. Horwich,* 382 Ill. 468, 47 N.E.2d 452, 453 (1943), *trfd.,* 320 Ill.App. 568, 51 N.E.2d 822 (1943). The partners hold an interest in specific partnership property, not in joint tenancy, but as tenants in partnership. *Temple v. Temple,* 365 N.W.2d 561, 567 (S.D.1985). In short, a partner owns no personal specific interest in any specific property of the partnership; the partnership owns the property and the partner's interest is an

undivided interest as co-tenant in all partnership property as a "tenant in partnership." *Smoot v. Smoot*, 568 S.W.2d 177, 180 (Tex.Civ.App.1978).

■ Under the newly created "tenancy in partnership," the interests of the partners are neither joint tenants nor tenants in common, as those terms are traditionally used, nor are they "joint interests." Thus under this hybrid, *sui generis,* type of tenancy, the "interest" referred to in § 454.528—"joint tenancy with right of survivorship" or "joint interest" except for property held by husband wife "and no other"—is not included in § 454.528.

In holding that partnership funds are not property held in the form of joint interest under § 454.528, the trial court, therefore, did not err.

This conclusion is buttressed by the fact that the legislature, in adopting the Child Support Enforcement Act, left intact (1) the provisions of the Uniform Partnership Law, § 358.250.2(3) which provide that a partner's right in partnership property is not subject to attachment or execution except upon a claim against the partnership and (2) exempting an individual partner's interest from attachment or execution for the individual judgment debt of a partner. While the General Assembly adopted numerous and specific provisions in the Child Support Enforcement Act to cover certain specific situations—workers' compensation benefits "shall be subject" to garnishment or execution (§ 287.260, R.S.Mo., 1986); wages may be paid over (§ 454.505); certain property subject to a lien—§§ 454.514 (obligor's share in estate), 454.515 (lien on real estate), 454.516 (motor vehicle), 454.-517 (workers' benefits), 454.518 (lien on law suits), 454.519 (lien on actions for personal injury)—the General Assembly left the provisions of the Partnership Law, § 358.250.2(3), intact.

But, although we conclude that (1) the interest of a partner, as a tenant in partnership, is not within the purview of § 454.528 insofar as the partner's right is a "joint interest" within the meaning of that section and (2) the legislature left the Uniform Partnership Law intact, the issue remains whether a partner's interest in the partnership property is subject to garnishment under the provisions of § 358.250.2(3).

Section 358.250.2(3) as noted above, provides that one partner's right in specific partnership property is not subject to attachment or execution, except upon a claim against the partnership. The law also provides that a partner's interest in a partnership is his share of the profits and surplus.

Missouri's Uniform Partnership Law is based upon the Uniform Partnership Act adopted by the Uniform Commissioners. See 6 U.L.A. Uniform Partnership Act, at 333 (1969). Sections 358.250, 358.260 and 358.280 are based upon sections 25, 26 and 28 of the Uniform Partnership Law.

Prior to the enactment of § 25 of the Uniform Law, now § 358.250.2(3), R.S.Mo., there was great confusion as to the right of one partner's separate creditor to attach or levy execution on an individual partner's interest in the business or firm property. See discussion in J. Crane & A. Bromberg, *Partnership,* § 43 at 240–245 (1968) and Official Comment to § 25 of the Uniform Partnership Act, 6 U.L.A. at 333 (1969); J. Gose, *The Charging Order Under the Uniform Partnership Act,* 28 Wash.L.Rev. 1 (1953). Under the common law:

> When a creditor obtained a judgment against the partner and he wanted to obtain the benefit of that judgment against the share of that partner in the firm, the first thing was to issue a *fi. fa.,* and the sheriff went down to the partnership place of business, seized everything, stopped the business, drove the solvent partners wild, and caused the execution creditor to bring an action in Chancery in order to get an injunction to take an account and pay on that which was due by the execution debtor. A more clumsy method of providing could hardly have grown up.

Lord Justice Lindley in *Brown, Janson & Co. v. Hutchinson & Co.,* 1 Q.B. 737 (1895) quoted in Gose, *supra,* 28 Wash.L.Rev. at 1.

■ The need for a solution to the common law approach which would protect partners and the separate creditors of individual partners was evident. The solution came in the form of §§ 25 and 28 of the Uniform Partnership Act—§§ 358.250 and 358.280, R.S.Mo. Section 25 of the Uniform Law and § 358.250 of the Missouri Law prohibits any attachment or execution of specific partnership property by a judgment creditor of an individual debtor-partner. This has been held in numerous decisions. *Metropolitan Casualty Co. v. Cimino*, 108 N.J.L. 243, 157 A. 152 (1931); *Charleston First Nat. Bank v. White*, 268 Ill.App. 414 (1932); *Buckman v. Goldblatt*, 39 Ohio App.2d 1, 314 N.E.2d 188 (1974). The primary purpose of the Uniform Law is to prevent disruption of partnership affairs by a creditor of an individual partner. *Willamette Production Credit Ass'n v. Morley*, 248 Or. 183, 433 P.2d 239, 244 (1967).

In lieu of authorizing attachment or execution upon the partnership property for a debt of one of the partners, the judgment creditor of an individual partner-debtor is given a more circuitous remedy to enforce the judgment in the form of a "charging order" on the individual partner's interest and his share of the profits and surplus in the partnership. Section 358.280. This judicial procedure under § 358.280 leads to a "sort of lien" on the interest the individual partner has in the firm and is subject to foreclosure. While this "charge" is in effect, the debtor-partner continues to be a partner except for distributions from the partnership. This procedure of "charging" one partner's interest has been utilized where a wife seeks alimony or child support. *Baum v. Baum*, 51 Cal.2d 610, 335 P.2d 481 (1959).

This "charging" procedure is the exclusive remedy for a partner's individual creditor, and it has been held to be a proper procedure not only for judgment creditors but for spouses seeking alimony or child support. *Baum v. Baum, supra. Baum*, in discussing the history of the "charge," held that the charging order on partnership interests has replaced levies of execution as a remedy for reaching such interests.

■ Under the Uniform Partnership Law, therefore, the proper method to "seize" the interest of an individual partner in a partnership is to apply to the proper court for a charging order, and to charge the individual partner's share of the profits and surplus in the partnership with the unsatisfied amount of the judgment, or arrearages for child support, and to foreclose on the partner's "interest" in the partnership. Section 358.280; see *Tupper v. Kroc*, 88 Nev. 146, 494 P.2d 1275 (1972).

■ But the provisions of the Missouri Uniform Partnership Law relating to "charging" the interest of the individual debtor partner presupposes that a true partnership is viable and in existence. The provisions of §§ 358.250, 358.260 and 358.-280, are not effective and do not apply if there is no "partnership" as defined in § 358.060. That section defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Although a partnership is not a legal entity, the statute adopts the common-law approach with modifications relating to marshalling assets, and protecting the business operation against the impact of personal involvements of the partners. See *N.E. & R. Partnership v. Stone*, 745 S.W.2d 266 (Mo.App.1988); *McKinney v. Truck Insurance Exchange*, 324 S.W.2d 773, 775 (Mo.App.1959). It is a relationship arising out of a contract, expressed or implied whereby parties engage in a common enterprise. *Troy Grain & Fuel Co. v. Rolston*, 227 S.W.2d 66, 68 (Mo.App.1950). The primary basis of a partnership is the intention of two or more persons, manifested by a contract, to become partners by contributing money, effects and skill to a lawful business in the conduct of which each shall not only act for himself but as agent of all and wherein each shares in the profits and losses. *Schneider v. Newmark*, 359 Mo. 955, 224 S.W.2d 968, 971 (1949). The primary consideration is whether the parties intended to carry on a business for a profit as co-owners. *Stuart v. Overland Medical Center*, 510 S.W.2d 494, 497 (Mo.App.1974). Where the evi-

dence is insufficient to show such intent, no partnership exists. *Nesler v. Reed*, 703 S.W.2d 520 (Mo.App.1985).

■ The only testimony or other evidence in the record before us as to the intention of the respondent and Joseph Janos to form a partnership or whether a partnership actually existed between the two consists of the sparse testimony of Robert Wills. In his direct examination, Wills testified that he was in "partnership" in the "Rainbow Lounge" with "Joe Janos," and that he had been in partnership since July 4, 1985. He further testified that the "business" maintained a checking account at Boatmen's Bank, which was "business money" and that either person could "sign" checks. He stated that he and Mr. Janos had a "partnership agreement," but that he did not have any written agreement with him in court. That is all the evidence tending to show that a partnership was intended or was in existence. There was no evidence showing the extent of the contribution of capital, skill, services of each partner; there was no evidence of the sharing of profits, or any other essentials or indicia of a partnership. There was no evidence of the many factors the courts have looked to to determine whether there is a partnership. See H. Reuschlein and W. Gregory, *Agency and Partnership*, § 175 at 250 (1979). Merely stating a conclusion that a "partnership" exists does not make it so.

This evidence, while a scintilla, was not sufficiently substantial to prove that a "partnership" existed. At most, this evidence showed only that a joint bank account existed at the Boatmen's Bank upon which either Wills or Janos could "sign" checks.

This situation is therefore analogous to *Hilke v. Bank of Washington*, 251 S.W.2d 963 (Mo.App.1952). There, Hilke and his wife sought recovery against a bank which paid over sums in their checking account to a creditor of the husband. In their action, Hilke and his wife alleged that they were partners doing business under the name of Hilke Painting and Decorating Company, that there were judgments against Hilke,

and several creditors had garnishments in aid of execution issued against the bank. The bank account was carried under the name of "Hilke Painting and Decorating Co." and below were written the words "Edward J. or Helena Hilke." This court reversed a directed verdict in favor of the plaintiffs and remanded the cause. In the course of the decision, we said:

No presumption of partnership arises solely from the use of the firm name unless the name itself is suggestive of a partnership. . . .

If, . . . the funds were in fact partnership funds, they were not subject to garnishment for the individual debts of Hilke, Section 358.250 subd. 2(3) RSMo 1949, V.A.M.S. . . .

*Hilke, supra*, 251 S.W.2d at 966.

## VII.

Under the above statutes and authorities, we therefore conclude that (1) the trial court did not err in concluding that the partnership property is not property held in a form of a "joint interest" under § 454.528, R.S.Mo., 1986; (2) no execution may be maintained against partnership property for the judgment debt of an individual debtor partner; (3) the proper procedure is to apply for a charging order upon the interest of the individual partner; (4) there was no substantial evidence to show that a true "partnership" in fact was intended or existed and was a viable entity under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); and (5) under such circumstances, as we did in *Hilke, supra*, we reverse the order of the trial court and remand the cause for an evidentiary hearing to determine whether a partnership between respondent and Janos exists in fact.

If the court finds, after such hearing at which substantial evidence is adduced, that a partnership exists and is viable, the motion to quash the garnishment should then be sustained, but without prejudice to filing an "application" to "charge" the interest of the respondent in the partnership for the unsatisfied amount of the arrearage for child support under § 358.280, R.S.Mo., 1986.

If, however, the court finds, after such hearing, that no partnership was intended or exists, then the court is directed to overrule the respondent's motion to quash and release the funds to the appellant, Joann Elizabeth Wills.

REINHARD, P.J., and CRIST, J., concur.