Janet Irene (Clay) SISNEY, Respondent,

v.

Timothy Lee CLAY, Appellant.

No. WD 44350.

Missouri Court of Appeals, Western District.

Feb. 4, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1992.

Application to Transfer Denied June 2, 1992.

**10**

Patrick Beeman, Gladstone, for appellant.

J. Michael Murphy, Liberty, for respondent.

Before KENNEDY, P.J. and FENNER and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Timothy Lee Clay appeals from the action of the trial court in sustaining Janet Irene Sisney's motion for summary judgment, filed in response to his motion to quash garnishment and his motion for determination of child support arrearage. The judgment of the trial court is reversed. In his appeal, Mr. Clay argues that the trial court erred in granting summary judgment to Ms. Sisney because the amount of child support arrearage was still in issue notwithstanding the application of § 454.515, RSMo 1986.[1] Mr. Clay contends said statute did not apply to the instant case because § 454.400 et seq. set forth child support collection procedures applicable solely to enforcement by the state and § 454.515 establishes a procedure intended for the creation of a lien on real estate owned by an obligor who is delinquent in child support.

Mr. Clay and Ms. Sisney were granted a dissolution of marriage on April 10, 1979 in California. Ms. Sisney was awarded custody of the two children born of the marriage. Mr. Clay was ordered to pay $160.00 per month in child support. A judgment modifying the decree was entered on July 8, 1986, by the Circuit Court of Clay County, Missouri. This judgment transferred custody of one of the children to Mr. Clay and reduced the child support payments owed by Mr. Clay to Ms. Sisney to $80.00 per month. On July 19, 1988, Ms. Sisney filed an arrearage affidavit with the

**1.** All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

circuit court which included a history and statement of interest due, and mailed a copy of said affidavit to Mr. Clay. On that same date, Ms. Sisney also filed a motion requesting an order requiring that payments be made to the circuit clerk as trustee, pursuant to § 452.345.2. On July 26, 1988, the court entered its order requiring Mr. Clay to make his child support payments to the clerk of the court as trustee for Ms. Sisney, effective August 8, 1988.

In August, 1988, Ms. Sisney began a garnishment on Mr. Clay's naval reserve pay. Subsequently, on May 12, 1989, Mr. Clay filed a motion to quash garnishment. On April 6, 1990, Mr. Clay filed a motion for determination of child support arrearage, arguing that the amount of child support arrearage sought by Ms. Sisney in her garnishment was incorrect. Ms. Sisney moved for summary judgment claiming that the issue was *res judicata* since Mr. Clay did not request a hearing within thirty days after receipt of the arrearage affidavit and § 454.515.4, states that, "If no hearing is requested, the affidavit shall be conclusive for all purposes." The trial court sustained Ms. Sisney's motion and Mr. Clay appeals.

■ Mr. Clay contends that the trial court erred in granting summary judgment on Ms. Sisney's motion because the amount of child support arrearage remained in issue notwithstanding § 454.515. Mr. Clay argues that the procedure used by Ms. Sisney was an inappropriate vehicle for collecting support from him because § 454.400 through § 454.516 establish a procedure whereby the state enforces child support obligations. He contends that, in particular, § 454.515 outlines a procedure to establish a lien on real estate in the county where the arrearage affidavit is filed. Mr. Clay owned no real estate in that county.

Section 454.400 begins a series of statutes entitled, "Child Support, Enforcement by State." The statutes following outline a comprehensive plan whereby the state acts to enforce support obligations. The Eastern District, in *Wills v. Wills*, 750 S.W.2d 567, 571 (Mo.App.1988), outlined the purpose of the statutory scheme:

In 1986, the General Assembly, responding to this growing crisis in child support, adopted the Child Support Enforcement Act, §§ 454.400–454.528, R.S.Mo., 1986. In many respects the Missouri Act tracked the provisions and requirements of the federal enactment, but in many respects, our General Assembly went beyond the provisions of the federal act. H.B. 1479, Laws, 1986 p. 1052. HB 1479 is an act relating to "establishing and enforcing support obligations." It was adopted to establish and enforce support obligations. The primary thrust of the Missouri Act is to provide a tool for enforcement measures by which the state, acting through the Division of Child Support Enforcement of the Department of Social Services, prosecuting attorneys, or attorneys in cooperation with the Division, can require errant or absent parents who receive public assistance to fulfill their parental responsibilities: The Act is primarily applicable to those situations where there has been an assignment of support payments to the state of Missouri pursuant to § 208.-040 or where the Missouri Division of Child Support Enforcement is providing "support enforcement services" pursuant to §§ 454.425 and 452.345.1. The Act is also applicable to persons who are not on public assistance. The Act requires the Division of Child Support Enforcement to render services to persons who are not recipients of public assistance. See § 454.425.

(footnotes omitted).

The action in *Wills* was initiated by the former wife seeking garnishment in aid of execution so as to satisfy her former husband's child support arrearage. *Id.* at 568. The court allowed such action to be taken by the wife, ordering an evidentiary hearing to determine if a partnership interest existed as to the funds sought to be garnished and ordering the funds released if no partnership was found. *Id.* at 575–76.

There is a scarcity of law on the issue presented by this case, both in Missouri and in other jurisdictions. Neither the appellant, nor the respondent, present any

case law dealing with the question involved. Ordinary rules of statutory construction must therefore be utilized in order to determine the applicability of the Act to private actions.

█ The primary rule of statutory construction is that the intent of the legislature is to be ascertained by the language used in the statute and effect should be given to that intent, if possible, considering the plain and ordinary meaning of the words used in the statute. *Weston Point Condominium Owners Ass'n v. Floro*, 796 S.W.2d 928, 930 (Mo.App.1990).

█ Mr. Clay contends the title of the series of statutes under review is "Child Support, Enforcement by State." The title of a legislative act is considered as part of that act and is weighed when construing the act. *Harry H. Houf & Sons Contractors, Inc. v. City of Wellsville*, 796 S.W.2d 435, 437 (Mo.App.1990). Although such a title would support the view that the statutes within the series are only to be used by the state, a review of the original Act reveals that the heading "Child Support, Enforcement by State," does not appear in said Act. Such heading therefore, is not a "title" for purposes of statutory construction and does not provide evidence of legislative intent.

In addition, the individual statutes belie the interpretation espoused by Mr. Clay. The statute at issue, § 454.515 does not refer to the state but instead refers to "the person entitled to receive payments under the judgment." Other statutes also make no mention of any state action. For example, § 454.520 contains the procedure for computation of interest on "all delinquent child support and maintenance payments." Section 454.525 allows fraudulent conveyances of property to be set aside, providing that "[a]ny party owed a support obligation" may maintain such an action. Section 454.528 deals with execution on joint property and provides that "any party in possession of a judgment or order for child support or maintenance may request levy and execution from a court of competent jurisdiction against real or personal property held by the obligor jointly with another

person...." The terms "all delinquent child support and maintenance payments," "person entitled to receive payment," "party in possession of a judgment," and "party owed a support obligation" do not indicate that action on the part of the state is necessary for the statutes to be invoked. The result is not disharmonious with the purpose of the Act, adopted to respond to the "growing crisis in child support." *Wills*, 750 S.W.2d at 571. That the Missouri Act has added provisions not found in the federal legislation is also indicative that "[t]his section was therefore intentionally adopted to provide a remedy above and beyond a state remedy to enforce child support payments...." *Id.* The remedy provided by § 454.515 is not exclusive to the state and Mr. Clay's first point is denied.

█ Mr. Clay further contends that the statute, § 454.515, did not apply to the specific situation before the court, in that the statute provides for a lien on real estate owned by an obligor who is delinquent in child support. The relevant portions of the statute provide:

1. A judgment or order for child support or maintenance payable in periodic installments shall not be a lien on the real estate of the person against whom the judgment or order is rendered until the person entitled to receive payments under the judgment or order requests a lien and the lien request is recorded in the office of the circuit clerk of any county in this state in which such real estate is situated in the manner provided for by the supreme court. Thereafter, the judgment shall become a lien on all real property of the obligor in such county, owned by the obligor at the time, or which the obligor may acquire afterwards and before the lien expires, for the respective amounts of child support or maintenance installments as they mature. The judgment or order shall not become a lien for any sum or sums prior to the date they severally become due and payable.

\* \* \* \* \* \*

3. If the circuit clerk in the county where the decree was entered has not been made trustee to receive child support or maintenance payments, the request shall be accompanied by sworn affidavit attesting to the number of unpaid installments, the dates when such unpaid installments became due, the total support or maintenance due and unpaid, and the last known mailing address of the obligor. The request shall also be accompanied by a motion to name the circuit clerk as trustee to receive all prospective payments of support or maintenance. If no affidavit is filed, or to the extent the affidavit fails to state all unpaid installments, the liens created by this section shall not attach to real estate for the installments not attested.

4. If a circuit clerk has not been named as trustee to receive support or maintenance payments, upon the filing of a lien request accompanied by an arrearage affidavit and motion to name the circuit clerk as trustee, the court shall enter an order naming the circuit clerk as trustee to receive the support or maintenance payments. A certified copy of the order together with a copy of the arrearage affidavit shall be mailed by the circuit clerk to the last known address of the obligor, as disclosed by the arrearage affidavit. If the obligor objects to or disagrees with the statement of arrearage contained in the affidavit, the obligor shall request a hearing thereon within thirty days of the date the order and affidavit were mailed to him. If no hearing is requested, the affidavit shall be conclusive for all purposes. An order entered after hearing shall have the same force and effect as a final judgment and shall be appealable in like manner.

\*　\*　\*　\*　\*　\*

Mr. Clay received an arrearage affidavit from Ms. Sisney prepared in compliance with § 454.515.3. He did not request a hearing, and thus Ms. Sisney argues that the affidavit was literally "conclusive for all purposes." Mr. Clay had no real property in Clay County, Missouri. Mr. Clay is not contesting the fact that had such a lien

been established, attaching to real estate in Clay County, the affidavit would be conclusive. Instead Mr. Clay is seeking to quash a garnishment, an entirely different proceeding. Mr. Clay argues that the "conclusive for all purposes" language of the statute is not applicable insofar as it only applies to the lien proceedings and thus the issue was not *res judicata*. This contention is correct, as the affidavit's conclusiveness is peculiar to the statute under scrutiny.

All of the provisions of § 454.515 relate to the creation of liens on real estate, establishing a comprehensive vehicle used in enforcing support obligations. Such liens are not automatic but are only created when following the procedures delineated in the statute. The provisions of § 454.515 provide a step-by-step guide to establish such a lien. Subsection 3 details the actions that must be taken by the person attempting to collect support by establishing a lien on real estate where the clerk of the court has not been made trustee to receive the child support payments. Subsection 4, following a logical progression, outlines what steps must be taken after the actions set out in subsection 3 have been accomplished by the person attempting to collect support.

When reading the phrase "for all purposes" in the context of the statute, the language is specific to this statute which deals with real estate. Given the need for finality in matters involving real estate titles, it is logical to assume that the legislature intended the language to apply only to the procedure for establishing a lien. It is difficult on the other hand, to believe that the language "for all purposes" should be used in the general sense as applying to the entire statutory scheme for collection of child support, when said language appears in the midst of a subsection of a statute dealing entirely with establishment of a lien against real estate.

The language, "conclusive for all purposes," is peculiar to the statute in question and does not operate as a bar in the instant case. Ms. Sisney's filing of the

affidavit in the context of the lien statute was without purpose as no lien was established in Clay County because no real property owned by defendant was located there. Mr. Clay would have no reason to be alert to the danger of not requesting a hearing on the affidavit where he knew that he had no real property which would be affected by the action. The judgment of the trial court, granting summary judgment to Ms. Sisney, is reversed and case is remanded for further proceedings consistent with this opinion.

All concur.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.