**STATE of Missouri ex rel. Carol LEET (Stone), Assignor, Appellant,**

v.

**Jack LEET, Respondent.**

**No. 62076.**

Supreme Court of Missouri, Division One.

Nov. 10, 1981.

Caption of Opinion Corrected On Court's Own Motion Dec. 8, 1981.

Rehearing Overruled Dec. 8, 1981.

Michael Henry, Mo. Division of Family Services, Jefferson City, for appellant.

Robert Liston and Ken Romines, Sedalia, for respondent.

STOCKARD, Commissioner.

On September 27, 1967, Carol Leet was granted a divorce from Jack Leet, respondent. The decree provided that respondent should pay to Carol $50 a month for the support of the minor child of the parties. Respondent made no payments for child support subsequent to 1971, and Carol made no request to respondent thereafter that payment be made, and she made no attempt through the courts to obtain payment. On the advice of an attorney, Carol contacted the Department of Welfare, Division of Family Services, which on May 30, 1979 referred the matter to the prosecuting attorney of Pettis County. Thereafter, based on a verified motion filed by the assistant prosecuting attorney, pursuant to § 207.025 RSMo 1978, an order was issued by the

Circuit Court of Pettis County directed to Jack Leet to show cause why he should not be held in contempt for failure to make the monthly payments for child support.[1]

At the time of the filing of the motion for an order to show cause Carol was not receiving *Aid to Families with Dependent Children (AFDC)* and apparently had never done so. When Carol applied to the Division of Family Services for what is designated as "non-AFDC" assistance,[2] she paid a fee in the amount of $60. See § 207.025.4 RSMo 1978.

On October 9, 1979 a hearing was held on the court's order to show cause. Respondent moved to dismiss the order on the ground that the proceedings violated Art. III, § 38(a) and Art. VI, § 23[3] of the Constitution of Missouri. On March 6, 1980 the court dismissed the contempt proceedings for the reason that the representation of Carol by the assistant prosecutor of Pettis County constituted an improper granting of public money to a private person in violation of Art. III, § 38(a) of the Constitution of Missouri.

Art. III, § 38(a) provides as follows:
"The general assembly shall have no power to grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation, excepting aid in public calamity, and general laws providing for pensions for the blind, for old age assistance, for aid to dependent[4] or crippled children or the blind, for direct relief, for adjusted compensation, bonus or rehabilitation for discharged members of the armed services of the United States who were bona fide residents of this state

during their service, and for the rehabilitation of other persons. Money or property may also be received from the United States and be redistributed together with public money of this state for any public purpose designated by the United States."

In *Menorah Medical Center v. Health and Education Facilities Authority*, 584 S.W.2d 73, 78 (Mo. banc 1979) this court stated:
"On its face, § 38(a) prohibits the granting of public money or lending of public credit to any private entity without regard to the purpose of the grant or loan. A proviso has been judicially grafted onto this and similar sections, however, which permits grants of public money to private entities if the grant is for a public purpose."

Reference was then made to several cases including *Americans United v. Rogers*, 538 S.W.2d 711 (Mo. banc 1976) and *State ex rel. Farmers' Electric Cooperative, Inc. v. State Environmental Improvement Authority*, 518 S.W.2d 68 (Mo. banc 1975). In the *Americans United* case one of the issues presented was the question of whether the statutory program of tuition grants to students at various approved public and private colleges violated § 38(a). It was held that no violation occurred because of the existence of a public purpose of aiding higher education. In the *Farmers' Electric Cooperative* case this Court stated that the "constitutional prohibitions noted are not violated when money and property are expended or utilized to accomplish a 'public purpose.'" Then with reference to the facts of that case the Court stated that the preservation of the state's natural resources has a "public purpose," and that the deter-

1. Section 207.025.5 provides that "Each prosecuting attorney in this state, as an official duty of such office, shall litigate or prosecute any action necessary to secure support for any person referred to such office by the division of family services, * * *."

2. Section 207.025.4 provides that "The director of the division [of family services] shall render child support enforcement services to persons who are not recipients of public assistance as well as to such recipients."

3. The trial court made no ruling concerning Art. VI, § 23. Appellant does not present argument in support of this contention. We consider the provision to be inapplicable to the facts of this case. See *Menorah Medical Center v. Health and Educational Facilities Authority*, 584 S.W.2d 73, 84 (Mo. banc 1979).

4. We do not determine whether this provision would authorize the General Assembly to direct the prosecuting attorney to provide the challenged assistance in this case.

mination of what constitutes a public purpose is primarily for the legislative department, and it will not be overturned unless found to be arbitrary and unreasonable.

Section 207.025 was passed by the 79th General Assembly in order to meet federal requirements which tied Federal-State welfare aid to the enactment by the State of strict child support enforcement laws, including the provision that the State provide child support enforcement services to non-AFDC as well as AFDC families. This requirement was a recognition by the Congress, and § 207.025 is an acknowledgement by the General Assembly, that in view of the increasing cost of welfare payments to families of abandoned children it is in the public interest not only to get and keep families off the welfare rolls, but also to assist families in not becoming members of those rolls. The General Assembly determined as a matter of public policy this should be accomplished by having the prosecuting attorneys assist in obtaining support from a parent for the maintenance of children who is able to do so but is not providing support. Such assistance constitutes a secondary private benefit to those receiving the support, but as stated in *State ex rel. Jardon v. Industrial Development Authority*, 570 S.W.2d 666, 675 (Mo. banc 1977), "The concensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classed as involving a public purpose." It is also established that:

> "The law does not require [the courts] to determine whether the public or private citizens benefit 'more' by reason of the legislation. Rather, the rule is that if the primary purpose of the act is public, the fact that special benefits may accrue to some private persons does not deprive the government action of its public character, such benefits being incidental to the primary public purpose."

We conclude that the trial court improperly sustained the motion to dismiss the contempt proceedings for the reason stated. This, however, has no effect on the merits of the defenses, if any, that respondent may have, and upon remand the trial court is to be guided by *State of Missouri ex rel. Division of Family Services, et al. v. Falloon*, 623 S.W.2d 41 (Mo.App.1981).

Judgment reversed and cause remanded.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

MORGAN, P. J., DONNELLY, C. J., and RENDLEN, J. concur.

BARDGETT, J. not sitting.