Jennifer L. SHADWICK, Respondent,

v.

Donald R. BYRD, Appellant.

No. WD 47272.

Missouri Court of Appeals,
Western District.

Dec. 7, 1993.

Thomas J. Walsh, Lee's Summit, for appellant.

Mary Beth Lundak, Kansas City, for respondent.

Before HANNA, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Donald R. Byrd, appeals the order of the Circuit Court of Jackson County, Missouri, finding appellant to be the natural father of the minor child, Breanna D. Shadwick, and entering judgment against appellant in the amount of $8550.00 for past support and expenses incurred in behalf of the minor child.

Respondent, Jennifer L. Shadwick, the mother of Breanna, had married Timothy Anderson on July 3, 1982. The couple separated in February of 1986 and got divorced on September 22, 1986. Breanna was born five months later, on February 27, 1987. According to Shadwick's testimony, the child was neither premature nor overdue.

Shadwick believed Byrd to be Breanna's natural father. She met Byrd at the end of May in 1986 and dated him for three to four months. The first time Shadwick and Byrd had sexual intercourse was at the end of May. Thereafter, they had sexual intercourse three to four times per month and used no contraceptives. Shadwick apparently had no sexual relations with Anderson between April 15, 1986 and July 15, 1986, the possible period of conception. Anderson testified that he did not even see his wife during this period of time.

Shadwick testified that she knew she was pregnant at the end of June in 1986. She did not mention that she was pregnant at the time of her divorce because she knew the child was not Anderson's. Shadwick testified that Byrd admitted to being Breanna's father. However, Byrd himself denies paternity.

This action commenced on November 6, 1991 when Shadwick filed a Petition for Declaration of Paternity and for an Order of Support pursuant to the Uniform Parentage Act. The petition was filed by the State of Missouri as assignee and by Jennifer Shadwick, individually and as next friend for her minor child, Breanna. The named respondents were Byrd and Anderson.

A default judgment was entered against Byrd on March 23, 1992, finding Byrd to be the natural father of the minor child and ordering that he pay $400.00 per month in child support. Byrd filed an application to set aside the default judgment which was sustained on April 24, 1992. Byrd was ordered to appear for blood testing. The blood test results revealed that the relative chance of paternity, assuming a 50% prior chance, was 99.09%.

Shadwick filed an amended petition on October 29, 1992, including, as a third count, an action seeking reimbursement and recovery of expenses incurred on behalf of herself and the minor child. The amended petition did not name the State of Missouri as assignee. Shadwick, in her amended petition, specifically asked the court to enter judgment against the natural father for the sum of the reasonable value of the expenditures necessarily made for the food, lodging, clothing, educational expenses, and medical attention for the minor child and for the reasonable value of the expenses incurred during Shadwick's pregnancy and the birth of the minor child.

On November 16, 1992, a bench trial took place and the trial court entered its order finding Byrd to be the natural father of Breanna. The court ordered Byrd to pay $400.00 per month in child support and also ordered Byrd to pay $8550.00 for past support and expenses in behalf of the minor child. This appeal followed.

In his first point on appeal, appellant argues that the trial court erred in permitting the prosecutor to proceed on Shadwick's claim for past due support, Count III of the amended petition, because the prosecutor was representing her in a private cause of action.

Appellant contends that the authority of the prosecutor to collect past due child support is set forth in section 454.420, RSMo

1986,[1] and is restricted to matters wherein the State is an assignee. Because the State is not an assignee here, appellant argues, there is no public purpose involved in the claim for past due child support as set forth in Count III of the amended petition and the prosecutor is therefore barred from proceeding with that claim.

■ Section 454.420, however, applies to situations where there has been an assignment of rights to collect support to the State of Missouri, and it sets out the procedures to be followed when there is a support obligation owed to the State. In the case at bar, there has been no assignment of rights to the State of Missouri. Thus, section 454.420 is not the appropriate statutory section in which to refer.

■ Section 454.425 provides, in relevant part, "[t]he division of child support enforcement shall render support enforcement services to persons who are not recipients of public assistance as well as to such recipients." Section 454.435.1, RSMo Supp.1992, provides, in pertinent part:

> Each prosecuting attorney may enter into a cooperative agreement ... to litigate or prosecute any action necessary to secure support for any person referred to such office by the division of child support enforcement including, but not limited to, ... actions to establish, modify and enforce support obligations, ... and actions to establish the paternity of a child for whom support is sought.

In *State ex rel. Leet v. Leet*, 624 S.W.2d 21 (Mo.1981), the Missouri Supreme Court held that a prosecutor's representation of the mother in proceedings against her former spouse to obtain child support did not constitute an improper granting of public money to a private person in violation of the State Constitution. At the time of filing her action, the mother was not receiving Aid to Families with Dependent Children (AFDC) and apparently had never done so. *Id.* at 22. The trial court dismissed the proceedings for the reason that the representation of the mother by the prosecuting attorney constituted an improper granting of public money to a pri-

vate person in violation of the State Constitution. *Id.* at 22. The Supreme Court reversed. *Id.* at 23.

In *Leet*, the Missouri Supreme Court stated that the statutory provision analogous to section 454.435.1 in the case at bar (section 207.025.5, RSMo 1978) was passed by the General Assembly "to meet federal requirements which tied Federal–State welfare aid to the enactment by the State of strict child support enforcement laws, including the provision that the State provide child support enforcement services to non-AFDC as well as AFDC families." *Id.* at 23. This requirement was a recognition by Congress, and the statutory provision an acknowledgement by the General Assembly, that in view of the increasing cost of welfare payments to families of abandoned children it is in the public interest not only to get and keep families off the welfare rolls, but also to assist families in not becoming members of those rolls. *Id.* at 23. The General Assembly determined as a matter of public policy that this should be accomplished by having the prosecuting attorneys assist in obtaining child support from a parent who is able to do so but is not providing support. *Id.* at 23. While such assistance constitutes a secondary private benefit to those receiving the support, " '[t]he concensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classed as involving a public purpose.' " *Id.* at 23 (quoting *State ex rel. Jardon v. Industrial Development Authority*, 570 S.W.2d 666, 675 (Mo. banc 1977)).

The *Leet* court further noted the established rule that if the primary purpose of the act is public, the fact that special benefits may accrue to some private persons does not deprive the government action of its public character, as such benefits are incidental to the primary public purpose. *Id.* at 23. The court concluded that the prosecuting attorney's representation of the mother did not constitute an improper granting of public money to a private person. *Id.* at 23; *see also State v. Scott*, 660 S.W.2d 229, 230 (Mo. App.1983) (finding significant governmental interest and no constitutional impediment in

---

1. All statutory references are to RSMo 1986 unless otherwise noted.

State using State funds to provide child support enforcement services to mother not on welfare).

In 1986, the General Assembly responded to the growing crisis in child support by adopting the Child Support Enforcement Act, §§ 454.400–454.528, RSMo 1986. *Wills v. Wills,* 750 S.W.2d 567, 571 (Mo.App.1988). The primary thrust of the Missouri Act is to provide a tool for enforcement measures by which the State, acting through the Division of Child Support Enforcement of the Department of Social Services, prosecuting attorneys, or attorneys in cooperation with the Division, can require errant or absent parents who receive public assistance to fulfill their parental responsibilities. *Id.* The Act is primarily applicable to those situations where there has been an assignment of support payments to the State or where the Division is providing "support enforcement services" pursuant to section 454.425. *Id.* The Act is also applicable to persons who are not on public assistance. *Id.* Section 454.-425 requires the Division of Child Support Enforcement to render services to persons who are not recipients of public assistance.[2]

In the case at bar, Shadwick was not a recipient of public assistance. However, contrary to appellant's argument, Shadwick's claim for past due child support involved a public purpose. Thus, under the authority of *Leet,* the prosecutor was not barred from proceeding with that claim. Based on the above authority, the trial court did not err in permitting the prosecutor to proceed on Shadwick's claim for reimbursement of past support and expenses incurred.

Appellant's first point is denied.

In his second point on appeal, appellant argues that Shadwick failed to prove by clear and convincing evidence that appellant was the father of the minor child. Appellant argues that the presumption that Shadwick's husband, Timothy Anderson, was the natural father of the child was not overcome and that there were no blood test results showing a probability of more than 50% that Byrd was the father. Appellant further argues that there were no blood test results offered as to Anderson, nor was there "medical or anthropological evidence relating to the paternity of the child on tests performed by experts."

Section 210.822, RSMo Supp.1992, provides, in relevant part, as follows:

1. A man is presumed to be the natural father of a child if:

(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated ...

2. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence....

Under section 210.836, RSMo Supp.1992, evidence relating to paternity may include: (1) Evidence of sexual intercourse between the mother and the alleged father during the possible time of conception of the child; (2) An expert's opinion concerning the probability of the alleged father's paternity of the child based upon the duration of the mother's pregnancy; (3) Blood test results, weighed in accordance with the evidence of the statistical probability of the alleged father's paternity of the child; (4) Medical or anthropological evidence relating to the alleged father's pa-

**2.** As further authority for appellant's first point, we note that in *Adams v. Williams,* 838 S.W.2d 71, 72 (Mo.App.1992), the court found that the explicit references to "past support" and "retroactive liability" in sections 210.841 and 210.828 of the Uniform Parentage Act authorize an action by the prosecutor for past child support. The court in *Adams* did not specify that the State had to be an assignee in order for the prosecutor to bring an action for past child support.

In *Adams,* the mother sued the father pursuant to the Uniform Parentage Act, asking the court to determine paternity and fix child support and custody. *Adams,* 838 S.W.2d at 71. The parties then entered into a consent judgment. Several

months later, the mother filed an action suing the father for back child support. *Id.* The court held that the first action barred the second action under the principle of res judicata. *Id.* at 73. As part of its rationale, the court stated that the mother was not precluded from seeking past support in her first action; rather, sections 210.-841.4 and 210.828 permitted her to seek "past support" and "necessary support." *Id.* at 73. In *Adams,* the first action, which barred the second action, was filed by a prosecuting attorney. *Id.* at 72. The court stated that the prosecuting attorney could have included a count for reimbursement of past necessary support in the first action. *Id.* at 72.

ternity of the child based on tests performed by experts; and (5) All other evidence relevant to the issue of the paternity of the child.

■ The judgment of the trial court should be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the judgment of the trial court in a paternity action, this court looks to the evidence that supports the judgment and disregards that which is unfavorable to the judgment. *Roberts v. Alford*, 832 S.W.2d 331, 332 (Mo.App.1992).

■ In the case at bar, the child was born five months after Shadwick and Anderson got divorced. Thus, Anderson is the presumed father of the child. The issue then is whether this presumption was rebutted by clear and convincing evidence that Byrd was the child's natural father. We find that the evidence clearly rebutted the presumptive paternity of Anderson and was sufficient to prove that Byrd was the child's natural father.

The record reflects that Shadwick and Anderson separated in February of 1986. They had no sexual relations between April 15, 1986 and July 15, 1986, the possible period of conception. Furthermore, Anderson testified that he never even saw his wife during this period.

Shadwick testified that she believed Byrd was the child's father. This belief was based on the fact that she dated Byrd for three to four months starting at the end of May in 1986. During this period, they had sexual intercourse at least three to four times a month and neither person used contraceptives. According to Shadwick, Byrd was the only man that she was involved with during this time. Shadwick knew she was pregnant

at the end of June in 1986 and she also knew that the child was not Anderson's. She told Byrd that she was pregnant and his response was that he would pay for an abortion. Shadwick testified that Byrd had admitted to being the child's father.

Byrd testified that he did offer to pay for an abortion in early July of 1986. At that time, he believed it was a possibility that the child was his.

Verified blood test results were admitted into evidence. The results showed a 99.09% probability that Byrd was the father of the child.[3]

The trial court's determination that Byrd is the child's father is supported by clear and convincing evidence.

Appellant's second point is denied.

In his final point on appeal, appellant argues that the trial court erred in awarding a judgment in the amount of $8550.00 to Shadwick for past support and expenses incurred on behalf of the minor child because Shadwick did not sustain her burden of proof for reimbursement of expenses. Appellant contends that the only items before the court were "guesstimates" of past necessities and that the court lacked jurisdiction for an award of past support.

As stated above, this court will reverse the trial court's judgment only if there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will give substantial deference to the trial court's ability to hear the evidence and determine the credibility of the witnesses. *Robinett v. Robinett*, 770 S.W.2d 299, 301 (Mo.App.1989).

■ Under the Uniform Parentage Act, a parent's retroactive liability for child support is limited to reimbursement of necessary

---

3. Appellant evidently misinterprets the blood test results which showed that the relative chance of appellant's paternity, assuming a 50% prior chance, was 99.09%. In his brief, appellant argues, "[t]his percentage, by mathematical computation then gives Defendant Donald Byrd a 49.545% chance of being the father of Breanna Shadwick." Appellant's conclusion is unsubstantiated and shows that appellant has misinterpreted the results.

Prior probability of paternity (which in the case at bar was 50%) is the probability that a randomly selected male from the general population will exhibit the gene characteristics found in the mother, the child and the defendant. *State ex rel. Division of Family Services v. Guffey*, 795 S.W.2d 546, 549 n. 2 (Mo.App.1990) (citing *Imms v. Clarke*, 654 S.W.2d 281 (Mo.App.1983)). This figure is used to determine the likelihood of paternity which, in the case at bar, was 99.09%.

expenses. *Schulze By and Through Schulze v. Haile*, 840 S.W.2d 263, 266 (Mo.App.1992). Once paternity is established, the trial court may divide the expense of past necessaries between both parents. *Id.* The party claiming entitlement to back support assumes the burden of proof. *Id.*

In *Robinett*, the mother appealed from the trial court's order denying her compensation for the expenses she had incurred for the child's support and birth. *Robinett*, 770 S.W.2d at 301. For the hearing on the issue of compensation for past child support expenses, the mother and father both submitted reports of their income and expenses. *Id.* at 302. The mother based her claim for past expenses on her estimate of the average amounts she had spent for food, clothing, medical, and child care expenses for the child. *Id.* at 302. She testified that she had paid cash for many of her purchases and was, therefore, unable to present documentation to support her claims for expenses. *Id.* at 302. The appellate court reversed the trial court's denial of the mother's claims for past expenses. *Id.* at 305. The court reasoned, in part, as follows:

> A mother's right to recover past expenditures for a child born out of wedlock arises under a quasi-contract theory.... That right arises from the father's obligation to support his minor children. If the father fails to fulfill that obligation he must compensate one who has provided necessaries for the child unless that person supplied them gratuitously.... Since the [mother] also had an obligation to provide such support ..., she did not provide it gratuitously.... Therefore, she has a right to recover compensation for her past support.

*Id.* at 305 (citations omitted).

The court in *Robinett* found that even though the trial court had the right to disbelieve the mother's testimony in the support hearing, there was sufficient evidence for the court to determine the reasonably necessary expenditures for which the mother should be compensated. *Id.* at 305. The appellate court determined that the trial court abused its discretion by failing to award any compensation for past expenses. *Id.* at 305.

■ In the case at bar, Shadwick testified that Byrd never gave her any support for the child. She stated that she earns approximately $1,000 per month. A document setting forth Shadwick's monthly expenses from February 1987 through November of 1992 for the support of the child was received into evidence. This document showed monthly expenses for food, clothing, housing, education, and medical expenses. Shadwick testified that she spends approximately $100 per month for food for the child, $35 per month for clothing, $435 per month for housing, including utilities, and $100 per month for education and day care. As for medical expenses, Shadwick testified that she pays cash because the child did not yet have insurance. She stated that the amount she has paid is not listed on the expense document.

Shadwick testified, in accordance with the document received into evidence, that her total expense for child support for the year from February through December 1987 was $8,584.00. In 1988, her yearly expense was $8,244.00. In 1989, her yearly expense was $8,244.00. In 1990, her yearly expense was $8,460.00. In 1991, her yearly expense was $8,040.00. In 1992, from January through November, her yearly expense was $8,525.00. Shadwick then explained how she arrived at these calculations. She testified that, while she did not keep her receipts, her calculations were very conservative. Since she had no receipts, she was testifying from memory.

Byrd testified that he was employed and earned approximately $17.00 per hour. He stated that he worked at least forty hours per week. He further testified that while he has four children born of another marriage, he no longer has any support obligation for these children.

We find that the evidence supports the trial court's judgment awarding Shadwick $8,550.00 for past child support expenses. Based on the record before us, it is clear that this was a reasonable award.

The trial court's judgment is affirmed.

All concur.