Dorothy BABB, Respondent,

v.

**Phillip Arthur PFUEHLER, Appellant.**

**No. 20937.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 12, 1997.

Jim S. Green, Sikeston, for appellant.

James C. Bullard, Bullard & Bullard, Kennett, for respondent.

CROW, Presiding Judge.

On May 10, 1994, Dorothy Babb ("Dorothy")[1] commenced this suit by filing a petition against Phillip Arthur Pfuehler ("Phillip"). The petition alleged Dorothy is the mother of a child ("Child") born February 1, 1976, and Phillip is Child's "natural father." The petition further pled Dorothy had borne all of the expense of raising Child and was entitled to reimbursement from Phillip "for a portion of the monies expended in caring for and raising [Child]."

---

1. For convenience and clarity, we refer to the parties by their respective forenames. We mean no disrespect.

In his answer, Phillip averred Dorothy was "prohibited from pursuing this cause of action because the Statute of Limitations has run...." On the day of trial, the court granted Phillip leave to amend his answer to specifically plead "Sections 516.120 and 516.110 R.S.Mo."

The suit was tried to a jury. Dorothy presented evidence regarding amounts she spent for necessaries[2] for Child from 1980 (when Child reached age four) through January, 1995; however, Dorothy testified she was not seeking reimbursement for any expenditure after December 31, 1994. Phillip objected to evidence of any expenditure by Dorothy (a) prior to May 10, 1989[3] (the date five years immediately preceding the date this suit was filed), and (b) after May 10, 1994 (the date this suit was filed).

The jury returned a verdict awarding Dorothy $40,000 from Phillip. The trial court entered judgment per the verdict.

Phillip appeals. The first of his four points relied on reads:

"The trial court allowed [Dorothy] to introduce into evidence [her] estimated expenses for raising the child for a period from 1983 through 1995.[⁴] The trial court erred in failing to limit the evidence for recovery to the period of the statute of limitations (i.e. May 10, 1989, to May 10, 1994)."

Inasmuch as the point is based on the premise that Dorothy's claim was subject to a five-year statute of limitation, our first task is to determine whether that premise is correct.

One of the statutes cited by Phillip in support of his first point is "Section 515.120 RSMo." That section is not a statute of limitation. We deduce from the record and Phillip's reply brief that the statute he meant to cite is § 516.120, RSMo 1994. It reads, in pertinent part:

"Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied ... except where a different time is herein limited...."

The above statute must be read in conjunction with § 516.100, RSMo 1994, another statute cited by Phillip. It reads, in pertinent part:

"Civil actions ... can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

The first of the two cases cited by Phillip in support of his first point is *Allen v. Allen,* 364 Mo. 955, 270 S.W.2d 33 (1954). There, a 1942 divorce decree awarded custody of the parties' minor daughter to the mother, but awarded no child support. 270 S.W.2d at 34–35. On June 20, 1952, *id.* at 38, the mother sued the father for a sum which the mother alleged she had spent during the preceding ten years for care and support of the daughter. *Id.* at 34. The father pled that any claim for support prior to June 30, 1947, was

---

**2.** *Freiburghaus v. Herman Body Co.,* 102 S.W.2d 743, 745[4] (Mo.App.1937) states: "The term 'necessaries' is a relative and flexible one, depending for its application upon the social position and situation in life of the infant, but in every case limited to things furnished of a character to be essential to the infant's bodily and mental needs."

**3.** In the transcript, Phillip's objection was to "anything ... beyond or before May 19, 1989." We infer from Phillip's brief that either his lawyer erroneously said May 19 instead of May 10 or

the court reporter erroneously recorded May 19 instead of May 10. Phillip's first assignment of error, addressed *infra,* identifies "the period of the statute of limitations" as May 10, 1989, to May 10, 1994.

**4.** As reported earlier, Dorothy's evidence about her expenditures for necessaries for Child began with the year 1980 and ended with January, 1995. Phillip's first point is inaccurate in identifying the period as "from 1983 through 1995."

barred by the five-year statute of limitation, § 516.120.[5] *Id.*

The mother maintained that the father's obligation to support the daughter was a continuing one, hence § 516.120(1) (quoted in part earlier in our opinion) was inapplicable. *Id.* at 37. The Supreme Court rejected that argument, explaining that the obligation the mother sought to enforce was the common law duty imposed on the father to support his child. That duty, said the Court, was "in the absence of precisely applicable terminology in the statute of limitations, 'obligations or liabilities, express or implied,' ... § 516.120(1), a quasi-contractual obligation." *Id.* at [5].

The Supreme Court then examined § 516.100 (also quoted in part earlier in our opinion) to determine when the mother's cause of action accrued. The Court held:

" '[A] cause of action accrues, and limitations thereon begin to run, when the right to sue arises.' ... [W]hen several payments are made to discharge an obligation for which another is primarily liable, a separate cause of action accrues when each payment is made, and the statute of limitations as to each cause of action runs from the date of the particular payment, as in the case of salaries payable monthly. Under the statute, a plaintiff may wait until all installments are due and then bring one action, 'but, if while waiting some installments have been due for the period of limitation, they will be barred.' ... [T]he period of limitation must be computed from the time the cause of action *accrued,* and since, according to the transcript, the [mother's] action was instituted on June 20, 1952, she is not entitled to recover for maintenance furnished prior to June 20, 1947."

*Id.* at 38[6, 7] (citations omitted; emphasis in original).

There is, of course, a difference between *Allen* and the instant case. In *Allen,* the daughter was born while the parents were married to each other. Here, Dorothy and Phillip were never wed to each other. However, that does not exonerate Phillip from his duty to support Child, nor does it impair Dorothy's right to reimbursement from Phillip for expenses she incurred for necessaries for Child. *McNulty v. Heitman,* 600 S.W.2d 168, 171–72[1,2] (Mo.App. E.D.1980).

Explaining a mother's rights, *McNulty* says:

"[A] mother has the option, if she wishes, to seek support before the expense is incurred, [an] equitable remedy[,] or furnish the necessary support and then seek a legal remedy to recover the reasonable value of her expenses."

*Id.* at 172[7].

However, warns *McNulty:*

"If she seeks the latter, this may not be a wise course of action because the statute of limitations may operate to bar her action. *Allen v. Allen,* 364 Mo. 955, 270 S.W.2d 33 (1954)."

*McNulty,* 600 S.W.2d at 172 n. 3.

It thus appears from *Allen* and *McNulty* that § 516.120(1) bars Dorothy from claiming reimbursement from Phillip for necessaries she provided Child prior to May 10, 1989. However, resolving Phillip's first point is not that simple.

In 1987, the General Assembly of Missouri enacted the Uniform Parentage Act ("UPA"). Laws of Missouri 1987, C.C.S.S.B. No. 328, pp. 646–53, now codified as §§ 210.817–.852, RSMo 1994, as amended. The UPA established a comprehensive procedure for determining paternity of, and compelling support for, children born in or out of wedlock. One provision of the UPA, § 210.828.2, reads:

"A parent's retroactive liability to another party for reimbursement of necessary support provided by that party to the child for whom a parent and child relationship is established under sections 210.817 to 210.852 is limited to a period of five years next preceding the commencement of the action."

---

**5.** Section 516.120 has remained unchanged since *Allen.* An alert reader will realize that the interval between June 30, 1947 (the date past which the father argued that the mother could not go back in claiming reimbursement), and June 20, 1952 (the date the mother filed suit), lacks ten days being five years. The discrepancy is unexplained in the opinion.

Although the above statute appears to precisely fit the instant suit, Phillip did not cite it in the trial court and does not rely on it in this appeal. That may be because, as explained in the next paragraph, paternity was not an issue in the instant suit.

While the instant suit was pending in the trial court, another circuit court in a separate action entered judgment declaring Phillip the father of Child.[6] We henceforth refer to that action as "the paternity suit." The instant suit was tried some fourteen months after entry of the judgment in the paternity suit. Before voir dire in the instant suit, by agreement of the parties, the trial court informed the venire that another court had determined Phillip was Child's father, hence this suit was "for the reimbursement of necessaries for [Child]."[7]

Understandably, Dorothy does not argue that § 210.828.2 applies in the instant suit instead of § 516.120(1). Her hypothesis, as we comprehend it, is that this suit is a common law action, not a statutory action under the UPA, hence § 210.828.2, a part of the UPA, does not apply.

Because neither party relied on § 210.828.2 in the trial court and neither party does so here, we shall decide Phillip's first point on the premise that § 516.120(1), as applied in *Allen*, 270 S.W.2d at 38, is the statute of limitation applicable to Dorothy's claim. We do not imply we would do so if one of the parties maintained § 210.828.2 applies.

◼ Dorothy claims there are two reasons why § 516.120(1) does not bar her from reimbursement for expenses incurred for necessaries for Child prior to May 10, 1989. The first reason, says Dorothy, is that her cause of action did not accrue until December 31, 1994, when she no longer provided necessar-

ies for Child. According to Dorothy: "That is the point in time when the last item of damage was sustained and the point when all resulting damage could be recovered." Dorothy relies on § 516.100, quoted in part earlier in this opinion.

Unfortunately for Dorothy, the Supreme Court of Missouri rejected the identical argument in *Allen*, 270 S.W.2d at 38. Dorothy does not attempt to distinguish *Allen* on that point, and we find it indistinguishable.

◼ Dorothy's second argument that § 516.120(1) does not bar her from reimbursement for expenses incurred for necessaries for Child prior to May 10, 1989, is that she could not sue Phillip until January 19, 1995, the date his fatherhood of Child was established in the paternity suit. Dorothy says: "[I] could not have successfully maintained [my] cause of action until [Phillip] was declared the father. Therefore, the cause of action may not have even accrued until January of 1995."[8]

Dorothy's premise is flawed. Since July 15, 1987 (the date the UPA took effect), a mother has had the right to bring an action under the UPA to obtain a declaration of the identity of the father of her child. § 210.826. Prior to the UPA, a mother could obtain similar relief in an action for a declaratory judgment. *R— v. R—*, 431 S.W.2d 152 (Mo. 1968). Consequently, any time after Child's birth, Mother could have sought an adjudication that Phillip is Child's father.

Accepting Dorothy's argument would allow a mother to create her own statute of limitation by waiting to establish paternity until she furnished the final item of necessaries to her child. Such a period could encompass eighteen years (or perhaps longer, though we need not decide that).

---

**6.** That action was brought by three parties: Child (by her next friend, Mother), Mother, and the Division of Child Support Enforcement. The judgment ordered Phillip to pay monthly child support beginning February 5, 1995.

**7.** Phillip might have successfully argued that Dorothy's claim in the instant suit was barred by the holding in *Adams by Northcutt v. Williams*, 838 S.W.2d 71 (Mo.App. E.D.1992), inasmuch as it appears from the judgment in the paternity suit

that Dorothy did not assert her claim there. However, Phillip makes no such contention, and we decline to consider the subject *sua sponte*. See also: *Ford v. Ford*, 867 S.W.2d 639 (Mo.App. S.D.1993).

**8.** If Dorothy's hypothesis be sound, she filed the instant suit before her cause of action accrued. As reported in the first sentence of this opinion, Dorothy commenced this suit May 10, 1994.

Proceeding on the parties' assumption that § 516.120(1) applies to Dorothy's claim (but emphasizing we may not have done so had there been an issue about that), we hold that *Allen,* 270 S.W.2d at 38, should have barred Dorothy from claiming reimbursement from Phillip for expenses incurred for necessaries for Child prior to May 10, 1989. That being so, evidence regarding Dorothy's expenses for necessaries for Child prior to that date was immaterial to any issue the jury should have considered. It necessarily follows that the trial court erred in receiving such evidence over Phillip's objection.

■ The admission of improper evidence is a basis for reversal when the evidence either prejudices the appellant or adversely affects the jury in reaching its verdict. *Ahrens & McCarron, Inc. v. Mullenix Corp.,* 793 S.W.2d 534, 539[1] (Mo.App. E.D.1990). Consequently, to obtain reversal Phillip must demonstrate he was prejudiced by admission of the evidence identified in the preceding paragraph. *Riley v. Union Pacific Railroad,* 904 S.W.2d 437, 443 (Mo.App. W.D. 1995). We shall consider that subject later, after resolving Phillip's other claims of error.

■ Phillip's second point avers the trial court erred "in allowing the jury's verdict to stand" when the only evidence of Dorothy's expenditures for rearing Child was an "estimate" made by Dorothy and Child in preparation for trial.[9] The lone case cited by Phillip in support of the point is *Landoll by Landoll v. Dovell,* 778 S.W.2d 846 (Mo.App. E.D.1989).

In *Landoll,* as here, a mother sought reimbursement from a father for necessaries the mother furnished their child. *Id.* at 847. Evidence considered by the trial court (hearing the case on a motion for summary judgment, *id.* at 847–48) included affidavits by the mother. *Id.* at 848. On appeal by the father from a money judgment for the mother, the appellate court held the mother's claim was limited to the reasonable value of the necessaries, and that some of the expenses listed by her were for recreation, vacation, cable, pet expense and entertainment. *Id.* at 848 n. 2. The opinion observed that absent further evidence, such items appeared to fall outside "food, clothing, medical, and educational expenses" normally considered necessaries. *Id.*

Emphasizing that a summary judgment is appropriate only if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law, the appellate court reversed the judgment and remanded the case to the trial court for further proceedings regarding reasonableness of the mother's expenses and the father's ability to pay. *Id.* at 848.

The evidence in *Landoll* differs from that in the instant suit.

At trial, Dorothy presented a 27–page list of what she spent each year from 1980 through 1994 (and also in January, 1995) for necessaries for Child. The list, which was meticulously itemized, included expenses for clothing, shoes, food, electricity, gas, rent, doctor, medicine and personal hygiene. As Child grew older, the list included lunch money and school supplies. From 1980 through 1989, expenses where listed year-by-year. Beginning with 1990, expenses were listed month-by-month. Items that may not have constituted necessaries (such as cable, school pictures and Christmas presents) were individually listed. In the aggregate, the expenses totalled $62,078.85.

Dorothy and Child testified about the expenses, and were cross-examined by Phillip's lawyer. As reported earlier, the jury awarded Dorothy $40,000.

Our research led us to *Shadwick v. Byrd,* 867 S.W.2d 231 (Mo.App. W.D.1993), another case where a mother sought reimbursement from a father for necessaries the mother furnished their child. *Id.* at 232. A non-jury

9. In the argument following the point, Phillip avers Dorothy presented no evidence concerning the reasonableness of her expenditures and no evidence that any expenditure was necessary. Those attacks do not appear in the second point, which complains merely that Dorothy's expenditures were "only an estimate." An appellate court is obliged to determine only the issues presented in the points relied on; issues raised only in the argument portion of the brief are not presented for review. *Mashburn v. Tri–State Motor Transit Co.,* 841 S.W.2d 249, 252[4] (Mo.App. S.D.1992); *Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 325[19] (Mo.App. S.D.1991).

trial resulted in a money judgment for the mother. *Id.* Rejecting the father's contention that the mother's evidence consisted of only "guesstimates," *id.* at 235, the appellate court noted that the mother produced a document setting forth her monthly expenses for food, clothing, housing, education, and medical costs. *Id.* at 236. She verified the expenses by her testimony, avowing that while she did not keep receipts, her calculations were very conservative. *Id.* The appellate court held the evidence supported the judgment. *Id.*

Dorothy's evidence is at least as strong, if not stronger than, the evidence in *Shadwick.* Applying *Shadwick,* we deny Phillip's second point.

■  His third point reads:

"The trial court erred in giving Instruction No. 6 (verdict director) in that the third element stated does not correctly state the law in that [Dorothy] must prove she exclusively maintained and supported the child and that the period must be limited from May 10, 1989, to May 10, 1994."

Rule 70.03 [10]  reads:

"Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07." [11]

At the close of the evidence, the trial court held an instructions conference per Rule 70.02(e). The court announced it had assembled an "instruction packet" comprising instructions numbered 1 through 7. The court remarked that a proposed instruction was requested by Phillip "patterned after MAI 6.01 and modified." [12] The court refused the instruction. The court then commented on the damages instruction it had chosen to give.

After the court determined that Dorothy's lawyer had nothing to present regarding the instructions, this dialogue occurred:

"THE COURT: Mr. Green, does the Defendant have anything to present on the record?

MR. GREEN[ [13]]: Nothing. Your Honor, I might say at this stage, object to the verdict directing instruction as not properly setting forth the—

THE COURT: I believe that's Instruction No. 6?

MR. GREEN: Yes, sir.

THE COURT: Okay. I've reviewed the cases that have been referred to the Court by the Plaintiff's counsel, and I believe that Instruction No. 6 accurately reflects the previous instructions [sic] that have been, that have been approved by our appellate courts and without any other guidance, I think that the Instruction 6 is appropriate. So your objection will be noted and overruled.

MR. GREEN: Judge, I would just point out to the Court, I think if you look at those cases, those are actually cases in which there had been a divorce, and that those cases dealt with, although no child support had been given, some of them where child support had been given and they were trying to modify, an [sic] I think

---

10.  References to Rules are to Missouri Rules of Civil Procedure (1996).

11.  Rule 78.07 reads, in pertinent part: "In jury tried cases, . . . allegations of error to be preserved for appellate review must be included in a motion for a new trial. . . . Where definite objections . . . were made during the trial . . . including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient. . . ."

12.  We cannot determine from the record whether the court was referring to MAI 6.01 [1965 New] or MAI 6.01 [1996 Revision]. Both are damages instructions pertaining to mitigating circumstances attendant upon a fatal injury. Neither pertains to necessaries for a child.

13.  Phillip's lawyer.

that's one important difference in the case that we are at bar.

THE COURT: Okay."

The instructions conference thereupon terminated.

The only reference to Instruction 6 in Phillip's motion for a new trial is:

"6. Because the Court erred in giving Instruction No. 6 given by the Court at the request of Petitioner, since the same does not correctly set out the law for this cause of action."

Nothing Phillip's lawyer said at the instructions conference and nothing in the above-quoted excerpt from his motion for a new trial bears any resemblance to the attacks on Instruction 6 in his third point.[14] Consequently, the assignment of error in the third point is not preserved for review. *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852, 859[1] (Mo. banc 1993); *Meeker v. Shelter Mutual Insurance Co.,* 766 S.W.2d 733, 744–45[16] (Mo.App. S.D.1989).

■ Phillip's final point attacks Instruction 7. Dorothy correctly points out that Phillip registered no objection to Instruction 7 during the instructions conference and lodged no complaint about it in his motion for a new trial. Consequently, the final point is not preserved for review. *Cooks v. Normandy School District,* 778 S.W.2d 339, 341[1] (Mo.App. E.D.1989); *Manufacturers American Bank v. Stamatis,* 719 S.W.2d 64, 69[7] (Mo.App. S.D.1986).

■ In adjudicating Phillip's first point earlier in this opinion, we held the trial court erred in receiving evidence of Dorothy's expenses for necessaries for Child prior to May 10, 1989.[15] We must now decide whether that error compels reversal. As previously explained, resolution of that question hinges on whether the evidence was prejudicial to Phillip.

Instruction 6 directed a verdict for Dorothy if the jury found, *inter alia,* that Dorothy "paid expenses and provided the primary support for [Child] from September 1980 to January 1995." Dorothy's evidence regarding her expenses for necessaries for Child covered a period virtually identical to the one embraced by the instruction. As we have seen, Dorothy's expenses—as shown by her evidence—totalled $62,078.85.

According to our calculations, Dorothy's evidence demonstrated that her expenses for necessaries for Child prior to May 10, 1989, amounted to approximately $35,923. Had the trial court excluded that evidence, Dorothy's proof of damages would have been reduced to approximately $26,156. The jurors would have known only that Dorothy spent that amount for necessaries for Child from and after May 10, 1989.

Inasmuch as the jury awarded Dorothy $40,000, it is obvious that the evidence regarding Dorothy's expenses for necessaries for Child prior to May 10, 1989, affected the jury in reaching its verdict. We therefore hold Phillip was prejudiced by the admission of such evidence.[16]

14. Were it not for Dorothy's lawyer, we would have no way to know what Instruction 6 said. The legal file presented by Phillip does not include Instruction 6 and, contrary to Rule 84.04(e), Phillip did not set forth Instruction 6 in the argument portion of his brief. It has been repeatedly held that no error regarding the giving of an instruction is preserved for review where the appellant disobeys Rule 84.04(e). *Twin Bridges Const. Co., Inc. v. Ferner,* 700 S.W.2d 534, 536–37[4] (Mo.App. S.D.1985); *Shady Valley Park & Pool, Inc. v. Fred Weber, Inc.,* 913 S.W.2d 28, 34[5] (Mo.App. E.D.1995); *McKee v. Wilmarth,* 771 S.W.2d 955, 957[4] (Mo.App. W.D.1989). *But see: Krenski v. Aubuchon,* 841 S.W.2d 721, 724[1] (Mo.App. E.D.1992), where the appellate court gratuitously considered the issue. However, Dorothy filed a supplement to the legal file. The supplement contains Instruction 6. Additionally, Dorothy's brief sets

forth Instruction 6 in the argument portion. Because, as shall appear above, we hold Phillip failed in the trial court to preserve his attack on Instruction 6 for appellate review, we need not decide the novel question of whether his omissions enumerated in the second sentence of this footnote were cured by Dorothy.

15. An attentive reader will recall that Phillip's first point also assigned error in the trial court's receipt of evidence regarding Dorothy's expenses for necessaries for Child after May 10, 1994 (the date this suit was filed). As shall become evident *infra,* that is a complaint we need not address.

16. We recognize an argument can be made that inasmuch as Phillip failed to preserve his complaint about the verdict-directing instruction (Instruction 6) and Dorothy's evidence regarding

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

PARRISH and SHRUM, JJ., concur.

her expenses for necessaries for Child covered a period virtually identical to the one embraced by that instruction, Dorothy's evidence was material to the issues submitted to the jury and consequently should not be cause for reversal. However, Phillip's failure to preserve his complaint about Instruction 6 does not cure the erroneous admission of evidence which, had it been excluded, would have left insufficient evidence to support the $40,000 verdict.