**STATE of Missouri, ex rel. DIVISION OF FAMILY SERVICES,**
Appellant,

J.S.S., minor child and Cynthia Lynn Summerford, Individually, and as Next Friend of J.S.S., minor child, Plaintiff,

v.

**David Scott SUMMERFORD,**
Respondent.

No. WD 59730.

Missouri Court of Appeals, Western District.

Submitted Jan. 31, 2002.

Decided May 21, 2002.

Rebecca Jo Kovac, St. Joseph, for Appellant Family Services.

Respondent acting pro se.

Before PAUL M. SPINDEN, C.J., P.J., JAMES M. SMART, JR., and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

The State of Missouri, *ex rel.*, Division of Family Services, as assignee of Cynthia Summerford, appeals from the judgment of the Honorable Weldon C. Judah, of Buchanan County Circuit Court, in which the court refused to grant an order of child support against David Summerford for the support of the parties' minor child, J.S.S.

## Factual Background

The Missouri Department of Social Services, Division of Child Support Enforce-

ment ("DCSE"), through the Buchanan County Prosecuting Attorney, filed a petition seeking a declaration of paternity, order of child support, including medical support, and for reimbursement of necessaries provided with respect to the minor child, J.S.S., under the Missouri Uniform Parentage Act, §§ 210.817—210.852 RSMo ("UPA"). The Mother of the child, co-petitioner Cynthia Lynn Summerford ("Mother"), participated both individually and as next friend of her child, J.S.S. The action was brought against the Father of the child, David Scott Summerford ("Father"). Father did not appear at trial.

Mother and Father resided together during the conception period of the child, J.S.S. The parties were not married at the time of J.S.S.'s birth, nor did Father sign the documents necessary to place his name on the child's birth certificate. In May of 1995, after the birth of J.S.S., Father and Mother were married. Mother and Father separated in August of 1999 and, at the date of trial remained married but living apart.

At the time of trial, Mother was not capable of employment due to major medical problems and was receiving State assistance. Father was employed at ASAP Land Express, Inc. Father provided no support for J.S.S. from the time of separation in August 1999 to the date of trial on December 21, 2000. Because Mother was a recipient of Temporary Assistance to Needy Families and received Medicaid benefits for J.S.S., she assigned her right to receive child support on behalf of J.S.S. to the Division of Family Services ("DFS").

At trial, the State presented its Form 14, which showed Father's, presumed child support obligation for J.S.S. to be $291.00 per month. Mother requested that Father be ordered to pay child support and to provide medical support. The trial court entered an order declaring Father to be the father of J.S.S. but declined to grant a prospective child support or medical support order. The court did grant the State's request for reimbursement of necessaries. In denying the appellants' request for child support, the court made the following specific findings:

> There is no question that the State may recoup the "state debt" under the authority of § 454.420 RSMo. and may "... make a motion to a court or administrative tribunal for *modification* of any court order creating a support obligation which has been assigned to ..." the state. [See Sec. 454.465.3 RSMo....] However, the court does not find that the assignment executed by Cynthia pursuant to Sec. 208.040.2(2), RSMo.... empowers the State, by virtue of § 454.465.6 RSMo. with any additional or greater rights to seek establishment of a support order in its favor than those of the assignor, Cynthia. [see *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119, at 129 (Mo.1979)] Neither the State nor Cynthia has pleaded or proved a cause for Dissolution of Marriage, Legal Separation or Separate Maintenance pursuant to Sec 452.130, RSMo. [see *Brokaw v. Brokaw*, 492 S.W.2d 859 (Mo.App.E.D.1973)]. ....

> Furthermore, where, as here, there is no prayer for an Order of child custody or visitation, the court has been unable to discover any authority, and the State has cited it to none, which causes the Court to find that it should exercise its discretion to enter an award of child support in favor of the State or Cynthia pursuant to Sec. 210.841.3(1) RSMo. Of course, Cynthia may avail herself of such relief by pursuing an action referenced within the preceding paragraph. Accordingly, under Count II of the PE-

TITION, the court declines to establish an child support obligation in David.

At trial, the court questioned Mother about her desire to file for divorce. Although Mother and Father are separated, Mother testified that she was not interested in filing for dissolution of the marriage because she had no interest in marrying again.

### Failure to Award Child Support

In its sole point on appeal, the appellant contends that the trial court erred in failing to award the presumed correct amount of child support because there was sufficient evidence on the record to support such an award and the court did not properly rebut nor explain why the presumed amount of child support was unjust or inappropriate, in that the presumed support amount was correctly calculated pursuant to Form 14 and Rule 88.01. Appellant contends that the State had standing to seek such an order and that the primary purpose of awarding child support is to provide for the child's welfare not as leverage to compel parents of needy children who are married but separated to file pleadings not required by law.

### Standard of Review

■ The award of child support, or the failure to award child support, will be affirmed unless "no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 869 (Mo.App.2001).

### *Mother, even though married, had the right to pursue a child support order under the UPA:*

■ In 1987, the Uniform Parentage Act was enacted, establishing a comprehensive procedure for determining paternity of, and compelling support for, children born in or out of wedlock. *Babb v. Pfuehler,* 944 S.W.2d 331, 334 (Mo.App.1997). It has been held that "the UPA is now the exclusive method for adjudicating paternity in Missouri." *Anderson v. Div. of Child Support Enforcement, Mo. Dep't of Soc. Servs.,* 995 S.W.2d 546, 548 (Mo.App.1999). Section 210.818 of the UPA states the parent-child relationship established under the UPA is not dependent on marriage. In addition to the establishment of paternity, the UPA allows the court to enter orders with respect to duty of support and in any other matter in the best interest of the child. § 210.841.3.

The cases upon which the trial court relied for its position that Mother must petition for dissolution of marriage, legal separation, or separate maintenance and must seek a judgment on child custody and visitation matters before the court may "exercise its discretion to enter an award of child support" were all decided prior to Missouri's 1987 enactment of the UPA. Here, pursuant to the UPA, Mother properly sought an adjudication of paternity and an order of support. Cases handed down since the enactment of the UPA in Missouri are consistent with the appellants' position in this case. *See, e.g., State v. Hall,* 867 S.W.2d 251, 253 (Mo.App.1993) (held that where petition specifically states it is being pursued under the UPA, the action could not be construed as an action for reimbursement of "state debt"); *Shadwick v. Byrd,* 867 S.W.2d 231, 234 (Mo. App.1993) (held that the DCSE, pursuant to the Child Support Enforcement Act, can require parents to fulfill their parental responsibilities in cases where there has been an assignment of support payments to the state).

### *The State had the right to pursue an order of support as assignee of Mother:*

After the separation, Mother applied for and received temporary assistance bene-

fits, pursuant to § 208.040.1(2), on behalf of J.S.S. for the reason that the child's father, although lawfully married to Mother, deprived the child of parental support or care by his continued absence from the home. In this case, Father was an "absent parent."

■ Pursuant to § 208.040.2(2) Mother's support rights were assigned to DFS. This section clearly states that the assignment is "effective as to both current and accrued support obligations ... and authorizes the division of child support enforcement ... to bring any administrative or judicial action to *establish* or enforce a current support obligation...."

Section 210.843.1 of the UPA specifically states:

If the existence of a parent and child relationship is declared, and a duty of support has been established pursuant to [the UPA], the support obligation may be enforced in the same or in other appropriate proceedings by the mother, the child, the division of child support enforcement, or any other public agency that has furnished or may furnish the reasonable expenses....

The prosecuting attorney, acting through DCSE, "can require errant or absent parents who receive public assistance to fulfill their parental responsibilities." *Shadwick*, 867 S.W.2d at 234. Thus, the DCSE had standing to seek a prospective award of child support under the UPA where the parties are married but separated, regardless of whether the award would be in favor of the State or in favor of Mother for the benefit of her child, J.S.S.

### The court erred in refusing to award child support in the correct presumed amount:

■ In determining an award of child support in any proceeding, the trial court is required by § 452.340.8 and Rule 88.01 to follow the procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996). *Ricklefs*, 39 S.W.3d. at 869–70. "It is undisputed that in actions filed under the UPA the trial court is to use Rule 88.01 and Form 14 to calculate the presumptive amount of child support due retroactive to the date of filing of plaintiff's petition." *Martin v. Obiakor*, 992 S.W.2d 201, 203 (Mo.App.1999). UPA § 210.841.5 states:

There shall be a rebuttable presumption that the amount of support that would result from the application of supreme court rule 88.01 is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of supreme court rule 88.01 would be unjust or inappropriate ... shall be sufficient to rebut the presumption in the case.

DCSE prepared and entered into evidence a Form 14, imputing income of $2,000.00 per month to Father. The court elected to accept DCSE's Form 14 and used the presumed amount ($291.00 per month) as evidence to award judgment for reimbursement of necessaries.

■ The trial court made no specific finding on the record that the Form 14 amount was unjust or inappropriate but denied the appellants' request for a prospective order of child support because the parties are married but separated and because there was no prayer for an order of child custody or visitation. The court based its ruling on the premise that child support will not be entered unless the child support action is combined with other actions, *i.e.*, dissolution of marriage, legal separation, custody, or visitation. This was error in that the UPA, which superceded the earlier cases cited by the court, does not require dissolution or custody orders as a condition of an award, as

shown above. The trial court accepted as sufficient the evidence of the Father's ability to pay for purposes of ordering reimbursement for necessaries but rejected such evidence for purposes of establishing prospective child support. The court did so because of the court's misunderstanding of the UPA and its application to the circumstances then before the court. Thus, we hold that the court misapplied the law.

### Mother does not have to file for divorce in order to obtain an order of support:

A parent "has a common law duty to support his child" and "has no fundamental right to avoid that duty." *Dycus v. Cross*, 869 S.W.2d 745, 750 (Mo. banc 1994). "The child's right to support is not in any way impaired by illegitimacy." *Buxton v. Kaneer*, 904 S.W.2d 77, 80 (Mo.App.1995). The same child support standards must be applied in cases involving illegitimate children as in cases involving children born within a lawful marriage. *K.R.W. by A.C.S. v. D.B.W.*, 830 S.W.2d 38, 40 (Mo.App.1992). Likewise, J.S.S., whose parents were unmarried when she was born, should not be denied her right to support from her father simply because her parents are now married and Mother has no interest in pursuing a dissolution.

The UPA provides for an award of child support and sets out the procedure for its determination. *State ex rel. Dep't of Soc. Servs., Div. of Child Support Enforcement v. Maher*, 976 S.W.2d 75, 79 (Mo.App.1998). Pursuant to § 210.829.1, a UPA action *"may* be joined by separate document with an action for dissolution of marriage, annulment, separate maintenance, support, custody or visitation." *Id.* at 78 (emphasis added). There is no UPA requirement, either express or implied, *mandating* that an action for dissolution, annulment, separate maintenance, custody, or visitation be joined with an action seeking child support.

The trial court stated it was unable to discover any authority to support its entering an award of child support, pursuant to the UPA, in a situation "where, as here, there is no prayer for an Order of child custody or visitation." The court failed to note that it had the authority to establish a custody and visitation schedule pursuant to § 210.841.3, which provides that in addition to the matter of support, the judgment or order may contain other provisions concerning: "(2) The custody and guardianship of the child; [or] (3) Visitation privileges with the child . . . ."

The trial court's ruling in this case is erroneous in that it would give children whose parents never marry greater rights to support than children whose parents at some time marry one another. The ruling would deny a child of married parents support from an absent parent unless there is a pleading for custody, visitation, dissolution, separation, or maintenance. Under the trial court's ruling, the State could not petition for current support against an absent parent if the parents were still in a validly existing marriage. Thus, the State would be required indefinitely to support children of married parents unless or until the custodial parent has the financial wherewithal to hire legal counsel to proceed with the above actions. The trial court's ruling also would effectively require the State to continually file cases for reimbursement of necessaries or state debt and to hunt down and serve with process the absent parent. This is "not judicially efficient" and both deprives the State of reimbursement and ignores the welfare of the child.

### Conclusion

We therefore reverse the trial court's judgment as it relates to child support and

medical support and remand back to the trial court with directions for entry of a child support award consistent with the presumed child support as found at trial. The court may also, if it chooses, enter an order of custody and visitation in view of the fact that Mother and Father are separated.

SPINDEN and HARDWICK, JJ., concur.